**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| AMANDA FLANNERY, | |
| Plaintiff, | 22-cv-6101 (FPG) |
| -against- | |
| THE CITY OF ROCHESTER, a municipal entity, PAUL ROMANO, "JOHN DOE POLICE OFFICERS 1-200" (names and number of whom are unknown at present), COUNTY OF MONROE, TODD BAXTER, "RICHARD ROE SHERIFF'S DEPUTIES 1-200" (names and number of whom are unknown at present), and other unidentified members of the Rochester Police Department and Monroe County Sheriff's Office, | |
| Defendants. | |

**MEMORANDUM OF LAW IN OPPOSITION**
**TO THE COUNTY DEFENDANTS' PARTIAL MOTION TO DISMISS**

# TABLE OF CONTENTS

Page

TABLE OF CONTENTS ................................................................................................. i

TABLE OF AUTHORITIES ......................................................................................... iii

PRELIMINARY STATEMENT ................................................................................... iii

LEGAL STANDARDS ................................................................................................. 2

   I.   MOTION TO DISMISS ...................................................................................... 2

   II.   *MONELL* LIABILITY ........................................................................................ 3

ARGUMENT ................................................................................................................. 5

   I.   PLAINTIFF'S DISABILTY CLAIMS ARE WELL PLED AGAINST THE COUNTY DEFENDANTS (RESPONDING TO POINT X OF THE COUNTY'S MEMORANDUM) **ERROR! BOOKMARK NOT DEFINED.**

   II.   THE COUNTY DOES NOT MOVE TO DISMISS PLAINTIFF'S SUPERVISORY LIABILITY CLAIM AGAINST BAXTER, AND THE *MONELL* CLAIM IS WELL PLED AGAINST THE COUNTY (RESPONDING TO POINT II IN THE COUNTY'S MOL) ........ 5

      A.   The County does not move to dismiss the Supervisory Liability Claim against Sheriff Todd Baxter. ..................................................................................................... 5

      B.   The *Monell* claim is well-pled. ................................................................... 6

         i.   The County's Motion to Dismiss the *Monell* Claim Ignores the Allegations in the FAC. ....................................................................................................... 7

         ii.   The FAC adequately pleads *Monell* liability under a theory of failure to train and supervise. .................................................................................................. 8

         iii.   The FAC adequately pleads *Monell* liability under a theory of custom, tolerance or acquiescence. ........................................................................................ 9

         iv.   The *Monell* Claim Is Adequately Pled Under The Standard For Alleging An Affirmative Municipal Policy. ................................................................... 9

   III.   THE CAUSES OF ACTION AGAINST THE INDIVIDUAL DEFENDANTS ARE WELL PLED ............................................................................................................ 11

   IV.   THE THIRD CLAIM FOR RELIEF (EXCESSIVE FORCE) AND THE FOURTH CLAIM FOR RELIEF (ASSAULT AND BATTERY) ARE WELL PLED (RESPONDING TO POINTS III AND IV OF THE COUNTY'S MOL) ....................................................... 13

      A.   The Third Claim for Relief is Properly Pled Under the Fourth Amendment. .............. 13

      B.   Even if the Fourteenth Amendment Standard Applies, the FAC Adequately Pleads Excessive Force. .............................................................................................. 15

      C.   Plaintiff's Assault and Battery Claims are Well Pled. ................................................ 16

V.   PLAINTIFF'S FIFTH CLAIM FOR RELIEF IS PROPERLY PLED (RESPONDING TO POINT V OF THE COUNTY'S MOL)......................................................................... 17

    A.   Restriction of Speech. ......................................................................... 17

    B.   The FAC Adequately Pleads First Amendment Retaliation. ....................................... 19

VI.   THE FAILURE TO INTERVENE CLAIM IS WELL PLED (RESPONDING TO POINT VI OF THE COUNTY'S MOL) ......................................................................... 20

VII.   THE NEGLIGENT TRAINING, SUPERVISION AND DISCIPLINE—IS WELL PLED AGAINST BAXTER (RESPONDING TO POINT VII OF THE COUNTY'S MOL) ........... 21

VIII. THE NEGLIGENT PLANNING CLAIM IS ADEQUATELY PLED UNDER *FERREIRA* V. *CITY OF BINGHAMTON*, 2022 NY SLIP OP 01953 (MAR. 23, 2022) (RESPONDING TO POINT VIII OF THE COUNTY'S MOL)............................................. 22

IX.   THE NEGLIGENCE CLAIM—THE FOURTEENTH CLAIM FOR RELIEF—IS WELL PLED (RESPONDING TO POINT IX OF THE COUNTY'S MOL) ..................................... 24

CONCLUSION............................................................................................................. 25

**TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Abay v. City of Denver*,
  445 F. Supp. 3d 1286 (D. Colo. 2020) ................................................................6, 14

*Alsaada* v. *City of Columbus*,
  536 F. Supp. 3d 216 (S.D. Ohio 2021), *modified sub nom. Alsaada* v. *City of Columbus, Ohio*, No. 2:20-CV-3431, 2021 WL 3375834 (S.D. Ohio June 25, 2021) ..............................................................................................................6, 13

*Anderson News, LLC* v. *Branen*,
  17 F.3d 552 (2d Cir. 1994) .................................................................................. 20

*Anderson News, LLC* v. *Am. Media, Inc.*,
  680 F.3d 162 (2d Cir. 2012) ....................................................................................2

*Anti Police-Terror Project v. City of Oakland*,
  477 F.Supp.3d 1066 (N.D. Cal. 2020) ...............................................................7, 14

*Applewhite v Accuhealth, Inc.*,
  995 N.E.2d 131 (2013) ..........................................................................................23

*Arias v. City of New York*,
  22 A.D.3d 436, 437 (2d Dep't 2005). ....................................................................25

*Arista Records, LLC* v. *Doe 3*,
  604 F.3d 110 (2d Cir. 2010) ....................................................................................2

*Asociacion de Periodistas de Puerto Rico v. Mueller*,
  529 F.3d 52 (1st Cir. 2008) ....................................................................................14

*Bardi* v. *Warren Cty. Sheriff's Dep't*,
  194 A.D.2d 21, 24 (3 Dept 1993) .........................................................................22

*Barr* v. *Albany Cnty.*,
  50 N.Y.2d 247 (1980) .......................................................................................21, 22

*Bd. of Cnty. Comm'rs v. Brown*,
  520 U.S. 397 (1997) ..............................................................................................11

*Bell Atlantic Corp. v. Twombly*,
  550 U.S. 544, 555, 570 (2007)..................................................................................2

*Black Lives Matter Seattle-King Cnty.* v. *City of Seattle, Seattle Police Dep't*,
466 F. Supp. 3d 1206 (W.D. Wash. 2020)................................................6, 13, 14, 20

*Boos* v. *Barry*,
485 U.S. 312 (1988). ...................................................................................17

*Brindley* v. *City of Memphis*,
934 F.3d 461 (6th Cir. 2019) ......................................................................18

*Buck* v. *City of Albuquerque*,
549 F.3d 1269 (10th Cir. 2008) ..................................................................14

*Byrd* v. *Abate*,
964 F.Supp. 140 (S.D.N.Y. 1997) ..............................................................12

*Cash* v. *Cnty. of Erie*,
2007 WL 2027844  (W.D.N.Y.2007) ....................................................21-22

*City of Canton* v. *Harris*,
489 U.S. 378 (1989)....................................................................................11

*Connick* v. *Myers*,
461 U.S. 138 (1983).....................................................................................18

*Cox* v. *Louisiana*,
379 U.S. 536 (1965)....................................................................................18

*Darrah* v. *City of Oak Park*,
255 F.3d 301 (6th Cir. 2001) ......................................................................14

*Davis* v. *Kelly*,
160 F.3d 917 (2d Cir.1998)..........................................................................12

*Doe v. Columbia Univ*,
831 F.3d 46, 48 (2d Cir. 2016).................................................................3, 25

*Don't Shoot Portland* v. *City of Portland*,
465 F.Supp.3d 1150 (D. Or. 2020) ......................................................4, 14, 20

*Dorsett v. Cnty. of Nassau*,
732 F.3d 157 (2d Cir. 2013).........................................................................19

*Dougherty v. Town of N. Hempstead Bd. of Zoning Appeals*,
282 F.3d 83 (2d Cir. 2002)............................................................................3

*Downes-Covington* v. *Las Vegas Metro. Police Dep't*,
No. 220CV01790GMNDJA, 2020 WL 7408725 (D. Nev. Dec. 17, 2020)........6, 13

*Duran* v. *Cty. of Monroe*,
No. 19-CV-6341-FPG, 2019 WL 6464279 (W.D.N.Y. Dec. 2, 2019) (FPG) ........................5

*Duran* v. *Sirgedas*,
240 Fed.Appx. 104 (7th Cir. 2007)........................................................14

*Edrei* v. *Maguire*,
892 F.3d 525 (2d Cir. 2018), *cert. denied*, 139 S.Ct. 2614 (2019). ................................. 15-16

*Ferreira v. City of Binghamton*,
2022 NY Slip Op 01953 (Mar. 23, 2022). ....................................................... 22-24

*Ferretti v. Vill. of Scotia*,
200 A.D.3d 1243 (3 Dept 2021) ................................................12

*Friedl v. City of New York*,
210 F.3d 79 (2d Cir. 2000) ................................................19

*Frisby* v. *Schultz*,
487 U.S. 474, 480 (1988). ................................................17

*Graham* v. *Connor*,
490 U.S. 386 (1989)................................................ 13-14

*Gregory v. Daly*,
243 F.3d 687, 701 n. 12 (2d Cir. 2001)................................................3, 25

*Hamilton v Beretta U.S.A. Corp*,
96 N.Y.2d 222, 233 [2001], op. after certified question answered, *Hamilton* v
*Beretta, et al.,* 264 F.3d 21 [2d Cir 2001]................................................24

*Hines v. Albany Police Dep't*,
520 Fed.Appx. 5 (2d Cir. 2013)................................................4

*Hooper* v. *Meloni*,
123 A.D.2d 511 (4 Dept 1986) ................................................21

*JANE STONE #1; JANE STONE #2; JANE STONE #3; JANE STONE #4; JANE
STONE #5; JANE STONE #6* v. *ANTHONY J. ANNUCCI, et al.,* 2021 WL
4463033 (S.D.N.Y., 2021) ................................................6

*Jenkins v. City of N.Y.*,
478 F.3d 76 (2d Cir. 2007)................................................4, 9

*Johnson v. City of Shelby*,
574 U.S. 10 (2014) ................................................2

*Keiler v. Harlequin Enters. Ltd.*,
   751 F.3d 64 (2d Cir. 2014)..........................................................................3

*Kingsley v. Hendrickson*,
   135 S. Ct. 2466 (2015).......................................................................... 15-16

*Lamb* v. *Baker*,
   152 A.D.3d 1230 (4 Dept 2017) ..............................................................22

*Leatherman v. Tarrant Cty. Narcotics Intelligence & Coordination Unit*,
   507 U.S. 163 (1993) ...................................................................................2

*Luther* v. *Hunt*,
   No. 3:19-CV-00744 (VAB), 2021 WL 311286 (D. Conn. Jan. 29, 2021) ...............6

*MacPherson v. Town of Southampton*,
   738 F. Supp. 2d 353 (E.D.N.Y. 2010) ............................................... 18-19

*Matusick v. Erie Cnty. Water Auth.*,
   757 F.3d 31 (2d Cir. 2014)..........................................................................4

*McCummings v. New York City Transit Auth.*,
   81 N.Y.2d 923, 926 (1993) .......................................................................25

*McIntyre* v. *Ohio Elections Comm'n*,
   514 U.S. 334, 347 (1995).........................................................................18

*McMillian v. Monroe Cty.*,
   520 U.S. 781, 784 (1997).........................................................................3

*Missel v. County of Monroe*,
   351 Fed.Appx. 543 (2d Cir. 2009)............................................................4

*Monell* v. *Dep't of Soc. Servs.*,
   436 U.S. 658 (1978)...............................................................................3–4

*Murphy* v. *Goord*,
   445 F.Supp.2d 261 (W.D.N.Y. 2006) .....................................................12

*Murphy* v. *West*,
   533 F.Supp.2d 312 (W.D.N.Y. 2008) .....................................................12

*NAACP* v. *Alabama*,
   357 U.S. 449, 460 (1958)........................................................................18

*NAACP* v. *Claiborne Hardware Co.*,
   458 U.S. 886 (1982).................................................................................17

*Nelson* v. *City of Davis,*
   685 F.3d 867 (9th Cir. 2012) ...............................................................14

*In re N.Y.C. Policing During Summer 2020 Demonstrations,*
   No. 20-cv-8924 (CM)(GWG), 2021 U.S. Dist. LEXIS 128437 (S.D.N.Y. July
   9, 2021) .................................................................................................4, 8

*Otero v. Wood,*
   316 F. Supp. 2d 612 (S.D. Ohio 2004) ...............................................15

*Parker v. City of Long Beach,*
   563 Fed.Appx. 39 (2d Cir. 2014), *as amended* (Apr. 21, 2014)..............4

*Pembaur v. City of Cincinnati,*
   475 U.S. 469 (1986)..............................................................................9

*Pickett v. Cnty. of Orange,*
   879 N.Y.S.2d 182 (2d Dept 2009) ......................................................22

*Piper* v. *City of Elmira,*
   12 F. Supp. 3d 577 (W.D.N.Y. 2014) ..................................................14

*Ryan v. Moss,*
   No. 11-CV-6015P, 2013 WL 956722 (W.D.N.Y. Mar. 12, 2013) ........21

*Safepath Sys. LLC v. N.Y.C. Dep't of Educ.,*
   563 F. App'x 851 (2d Cir. 2014) ...........................................................3

*Schnitter v. City of Rochester,*
   556 Fed.Appx. 5, 2014 WL 494893 (2d Cir. 2014)...............................4

*Seiden* v. *Sonstein,*
   127 A.D.3d 1158 (2 Dept 2015) .........................................................22

*Smullen* v *City of New York,*
   28 NY2d 66 (1971) .............................................................................23

*Swierkiewicz v. Sorema N.A.,*
   534 U.S. 506 (2002) .............................................................................2

*Tangreti* v. *Bachmann,*
   983 F.3d 609 (2d Cir. 2020)..................................................................5

*Torraco* v. *Port Auth. of N.Y. & N.J.,*
   615 F.3d 129 (2d Cir. 2010)..................................................................3

*Torres v. Madrid*,
  141 S. Ct. 989 (2021) ...........................................................................................13

*Velez* v. *City of N.Y.*,
  730 F.3d 128 (2d Cir. 2013) ................................................................................22

*Vives* v. *City of N.Y.*,
  524 F.3d 346 (2d Cir. 2008) ..................................................................................9

*Vodak* v. *City of Chicago*,
  639 F.3d 738 (7th Cir. 2011) ...............................................................................18

*Walker v. City of N.Y.*,
  974 F.2d 293 (2d Cir. 1992) ................................................................................4, 9

*Yang* v. *Hardin*,
  37 F.3d 282 (7th Cir. 1994) .................................................................................20

## Statutes

42 U.S.C. § 1983 ........................................................................................ *passim*

## Rules

Fed. R. Civ. P. 8(d)(3) ...................................................................................3, 25

Rule 12(b)(6) ...............................................................................................2–3

## Constitutions

U.S. Const. amend. I ..................................................................................... *passim*

## Other Authorities

Sophie Kasakove, *Colorado Jury Awards $14 Million to Demonstrators Injured in George Floyd Protests*, New York Times (Mar. 26, 2022), https://www.nytimes.com/2022/03/26/us/denver-george-floyd-protests-ruling.html.................................................................... 6

## PRELIMINARY STATEMENT

In her First Amended Complaint ("FAC"), Plaintiff, AMANDA FLANNERY, details incidents where Sheriff's Deputies, acting jointly with RPD officers and other law enforcement, violated her rights and caused her serious physical, psychological and emotional injuries at racial justice protests on September 2 – 6, 2020. The FAC includes detailed allegations of the Sheriff's Deputies' misconduct, undertaken pursuant to official municipal policies of retaliation against Black Lives Matter Protesters.

The entire thrust of the FAC is that Sheriff BAXTER, the policymaking official for the COUNTY on protest policing issues, in coordination with the City and RPD officials, devised an unlawful protest response plan and ordered Sheriff's Deputies to suppress the protests, in retaliation for the message protesters were expressing, by use of extreme violence, including the use of military-grade equipment and chemical weapons. See, e.g., FAC ¶¶ 28, 107-116. The widespread use of pepper spray, pepper-balls, tear gas, and other types of "less lethal" weapons belies any claim that individual officers were acting on their own rather than implementing a preconceived municipal plan.

The County does not deny the allegations that BAXTER coordinated with City and RPD officials to devise the protest response plan, or that said plan was implemented by Sheriff's Deputies who acted jointly with RPD officers. Instead, the County only argues that the FAC was not pleaded with enough detail and specificity against them. In doing so, the County urges this Court to adopt a heightened pleading standard for both the § 1983 claims and the state law claims, insisting on detailed specificity of the facts and an explanation of the supporting legal theories. But the Supreme Court has explicitly rejected a heightened pleading standard for § 1983 claims— or any claim that is not listed in Rule 9 of the Federal Rules of Civil Procedure, *see Swierkiewicz v. Sorema N.A.*, 534 U.S. 506 (2002); *Leatherman v. Tarrant Cty. Narcotics Intelligence &*

*Coordination Unit*, 507 U.S. 163 (1993); and it has reversed holdings that required a complaint to specify the legal claims upon which it rests, *see Johnson v. City of Shelby*, 574 U.S. 10, 11 (2014).

Moreover, this FAC was originally filed in State Court, where the more lenient notice pleading standard applies. FRCP 81 states that a Plaintiff need not replead once a case is removed to federal court. Fed. R. Civ. P. 81(c)(2) ["*Further Pleading.* After removal, repleading is unnecessary unless the court orders it."]. It is inappropriate for the City to remove the FAC to federal court and then claim that it fails to meet the more stringent *Iqubal/Twombly* pleading standard. If the Court believes any of the claims are insufficiently pled, Plaintiff respectfully requests that the claims be dismissed without prejudice to replead, since the FAC was originally filed in state court.

Notably, the County does not move to dismiss the Supervisory Liability claim against Monroe County Sheriff Todd Baxter, and so that claim cannot be dismissed.

For these reasons and the reasons articulated below, the County's partial motion to dismiss the FAC should be denied in its entirety.

## **LEGAL STANDARDS**

### I.   **MOTION TO DISMISS**

A Rule 12(b)(6) motion must be denied if the complaint includes "enough facts to state a claim to relief that is plausible on its face;" that is, enough factual allegations, taken as true, "to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007); see also *Arista Records, LLC v. Doe* 3, 604 F.3d 110, 120 (2d Cir. 2010). "[I]n determining whether a complaint states a claim that is plausible, the court is required to proceed 'on the assumption that all the [factual] allegations in the complaint are true,' [e]ven if their truth seems doubtful." *Anderson News, LLC v. Am. Media, Inc*., 680 F.3d 162, 185 (2d Cir. 2012) (quoting Twombly, 550 U.S. at 555). "Given that the plausibility requirement 'does not impose a

probability requirement at the pleading stage . . . a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of the facts alleged is improbable, and that a recovery is very remote and unlikely.'" *Id*. (quoting *Twombly*, 550 U.S. at 556).

The Court must construe the complaint liberally and accept all facts alleged on information and belief when they are "peculiarly within the possession and control of the defendant, or where the belief is based on factual information that makes the inference of culpability plausible." *Arista*, 604 F.3d at 120 (citations omitted); see also *Keiler v. Harlequin Enters. Ltd.*, 751 F.3d 64, 71 (2d Cir. 2014). Direct evidence of a defendant's intent, motive, or knowledge is rarely available to plaintiffs before discovery, and "[i]t is sufficient to allege facts from which [the relevant mental state] on the part of the defendants reasonably may be inferred." *Safepath Sys. LLC v. N.Y.C. Dep't of Educ.*, 563 F. App'x 851, 857 (2d Cir. 2014) (internal quotation marks omitted) (quoting *Dougherty* v. *Town of N. Hempstead Bd. of Zoning Appeals*, 282 F.3d 83, 91 (2d Cir. 2002)). "Furthermore, the plaintiff is at liberty to plead different theories, even if they are inconsistent with one another, and the court must accept each sufficiently pleaded theory at face value, without regard to its inconsistency with other parts of the complaint." *Doe* v. *Columbia Univ.*, 831 F.3d 46, 48 (2d Cir. 2016), *citing* FED. R. CIV. P. 8(d)(3) ("A party may state as many separate claims ... as it has, regardless of consistency."); *Gregory v. Daly*, 243 F.3d 687, 701 n. 12 (2d Cir. 2001).

## II.    *MONELL* LIABILITY

"[A] local government is liable under § 1983 for its policies that cause constitutional torts." *McMillian* v. *Monroe Cty.*, 520 U.S. 781, 784 (1997); *see Monell* v. *Dep't of Soc. Servs.*, 436 U.S. 658, 693 (1978). "To hold a city liable under § 1983 for the unconstitutional actions of its employees, a plaintiff is required to plead and prove three elements: (1) an official policy or custom that (2) causes the plaintiff to be subjected to (3) a denial of a constitutional right." *Torraco* v. *Port Auth. of N.Y. & N.J.,* 615 F.3d 129, 140 (2d Cir. 2010) (internal quotation marks omitted).

3

A plaintiff may satisfy the "policy or custom" requirement by alleging (1) a formal policy officially endorsed by the municipality; (2) actions taken by government officials responsible for establishing the municipal policies that caused the particular deprivation in question; (3) a practice so consistent and widespread that, although not expressly authorized, constitutes a custom or usage of which a supervising policy-maker must have been aware; or (4) a failure by policymakers to provide adequate training or supervision to subordinates to such an extent that it amounts to deliberate indifference to the rights of those who come into contact with the municipal employees. *See Parker v. City of Long Beach*, 563 Fed.Appx. 39, 41 (2d Cir. 2014), *as amended,* (Apr. 21, 2014) (failure to train); *Matusick v. Erie Cnty. Water Auth.*, 757 F.3d 31, 61–62 (2d Cir. 2014) (persistent and widespread practice); *Hines v. Albany Police Dep't*, 520 Fed.Appx. 5, 7 (2d Cir. 2013) (actions of policymakers); *Schnitter v. City of Rochester*, 556 Fed.Appx. 5, 8, 2014 WL 494893, at *2 (2d Cir. 2014) (failure to train or supervise); *Missel v. County of Monroe*, 351 Fed.Appx. 543, 545 (2d Cir. 2009) (formal policy and act of a person with policymaking authority for the municipality).

"[A] complaint alleging deliberate indifference must plead some facts that, if proven, would tend to show that (1) a policymaker knows to a moral certainty that employees will confront a given situation; (2) the situation either presents the employee with a difficult choice of the sort that training or supervision will make less difficult or that there is a history of employees mishandling the situation and (3) the wrong choice will frequently cause the deprivation of citizens' constitutional rights." *In re N.Y.C. Policing During Summer 2020 Demonstrations*, No. 20-cv-8924 (CM)(GWG), 2021 U.S. Dist. LEXIS 128437 at *33-34 (S.D.N.Y. July 9, 2021); (quotations omitted) (quoting *Jenkins v. City of N.Y.*, 478 F.3d 76, 94 (2d Cir. 2007) quoting *Walker v. City of N.Y.*, 974 F.2d 293, 297 (2d Cir. 1992)).

## ARGUMENT

I.   **THE COUNTY DOES NOT MOVE TO DISMISS PLAINTIFF'S SUPERVISORY LIABILITY CLAIM AGAINST BAXTER, AND THE *MONELL* CLAIM IS WELL PLED AGAINST THE COUNTY (Responding To Point II In The County's MOL)**

    **A.   The County does not move to dismiss the Supervisory Liability Claim against Sheriff Todd Baxter.**

The County does not move to dismiss the Supervisory Liability claim, even though the Second Claim for Relief is explicitly entitled "Municipal *and Supervisory Liability*" and is explicitly pleaded against the County *and Baxter*. FAC p. 29. Thus, the County has waived any arguments it may otherwise have been able to assert and may not raise new arguments in Reply.

To the extent that the Court deems the County's memorandum to have argued for dismissal fo the Supervisory Liability claim, the motion must be denied because the FAC adequately pleads supervisory liability against BAXTER. This Court has expressly held in a prior lawsuit against BAXTER that, "Sheriffs can be held liable under § 1983 in their individual capacities for their negligent acts of failing to adequately train and supervise their subordinates." *Duran* v. *Cty. of Monroe*, No. 19-CV-6341-FPG, 2019 WL 6464279, at *5 (W.D.N.Y. Dec. 2, 2019) (FPG)

Allegations that a municipal policymaker was personally involved in the development and implementation of policies that caused the violation of a plaintiff's constitutional rights is sufficient to allege that the policymaker is responsible in their individual capacity. In *Tangreti* v. *Bachmann*, 983 F.3d 609 (2d Cir. 2020), the Second Circuit found that "after *Iqbal*, there is no special rule for supervisory liability. Instead, a plaintiff must plead and prove 'that each Government-official defendant, through the official's own individual actions, has violated the Constitution.' " *Id*. at 618 (quoting *Iqbal*, 556 U.S. at 676).

Since *Tangreti*, district courts in this circuit have repeatedly held that where a policymaker creates policies that violated a plaintiff's rights, they may be held directly liable under § 1983. For

example, District Judge Ronnie Abrams of the Southern District of New York recently explained, "An individual who creates a policy or custom whereby the constitution is violated, however, is more directly and personally involved in the constitutional violation than someone who is only negligent in his supervision of the official committing the underlying offense. Holding a policymaker liable for his or her personal handiwork—the creation or maintenance of a policy or custom—is not the same as holding a supervisor vicariously liable for the actions of his subordinates." *JANE STONE #1; JANE STONE #2; JANE STONE #3; JANE STONE #4; JANE STONE #5; JANE STONE #6* v. *ANTHONY J. ANNUCCI, et al.,* 2021 WL 4463033, at *8 (S.D.N.Y., 2021)*; see also* Luther v. *Hunt*, No. 3:19-CV-00744 (VAB), 2021 WL 311286, at *6 (D. Conn. Jan. 29, 2021) ("While a close question, at this stage, Mr. Luther's allegations regarding Director Maiga's involvement are sufficient to survive a motion to dismiss, as to the Director of Offender Classification and Population Management's conceivable involvement in the alleged violations of Mr. Luther's equal protection rights.").

Here, because BAXTER was sued in his individual capacity, FAC ¶ 6, and the FAC alleges he affirmatively developed and implemented the policies that violated Plaintiff's rights, the County's motion to dismiss the Second Claim for Relief against him must be denied.

### B. The *Monell* claim is well-pled.

In case after case about police violence during the nationwide protests in the wake of George Floyd's murder, courts have repeatedly held that the indiscriminate use of chemical agents and other "less lethal" crowd control tactics—like those used against Plaintiff and other protesters as alleged in the FAC—violated the First, Fourth and Fourteenth Amendments.[1] Like those cases,

---

[1] *See, e.g.*, Sophie Kasakove, *Colorado Jury Awards $14 Million to Demonstrators Injured in George Floyd Protests*, New York Times (Mar. 26, 2022), https://www.nytimes.com/2022/03/26/us/denver-george-floyd-protests-ruling.html; *In re 2020 Demonstrations*, 2021 U.S. Dist. LEXIS 128437; *Alsaada v. City of Columbus*, 536 F. Supp. 3d 216 (S.D. Ohio 2021), *modified sub nom. Alsaada* v. *City of Columbus, Ohio*, No. 2:20-CV-3431, 2021 WL

the FAC details that the RPD and Monroe County Sheriff's Office ("MCSO") jointly implemented a plan to use chemical and other "less lethal" weapons indiscriminately against protesters. FAC ¶ 60. The entire thrust of the claim is that the vicious treatment of the protesters was motivated by animus to their message and efforts to secure equal rights for Black and brown people. *See, e.g.* FAC ¶¶ 11-14, 38-40, 63, 69, 108-09. This coordinated strategy validated and encouraged the use of intimidation and excessive force.

           i.        The County's Motion to Dismiss the *Monell* Claim Ignores the Allegations in the FAC.

In moving to dismiss the *Monell* claim, the COUNTY and BAXTER ignore the allegations pled against them. Instead, the COUNTY and BAXTER focus on a straw man argument about its Hazard Mitigation Plan. County MOL at 3-4. While that plan illustrates the County's ill-conceived policy toward free speech activity—by conflating peaceful protests with violent riots, *see* FAC ¶¶ 101-05—the gravamen of Plaintiff's case against the COUNTY and BAXTER is that they coordinated with the RPD to violently suppress peaceful demonstrations meant to secure the equal rights of Black and brown people. This coordinated response is detailed in paragraphs 104-117 of the FAC.

Nowhere in its brief does the County address these detailed allegations. Instead, the County argues that "the County's Hazard Mitigation Plan … cannot be said to be a policy of the Sheriff or applicable to Sheriff's deputies in their training." County MTD at 5. In the face of the many allegations about the County's actions—which spanned several weeks and involved the highest-level County officials—the County's motion lacks credibility. The allegations in the FAC

---

3375834 (S.D. Ohio June 25, 2021); *Downes-Covington* v. *Las Vegas Metro. Police Dep't*, No. 220CV01790GMNDJA, 2020 WL 7408725 (D. Nev. Dec. 17, 2020); *Anti Police-Terror Project v. City of Oakland*, 477 F.Supp.3d 1066, 1086 (N.D. Cal. 2020); *Black Lives Matter Seattle-King Cnty.* v. *City of Seattle, Seattle Police Dep't*, 466 F. Supp. 3d 1206, 1214–15 (W.D. Wash. 2020); *Abay v. City of Denver*, 445 F. Supp. 3d 1286, 1291–92 (D. Colo. 2020); *Don't Shoot Portland* v. *City of Portland*, 465 F.Supp.3d 1150 (D. Or. 2020).

sufficiently allege an official municipal policy under any established formulation. *See*, *e.g.*, *In re N.Y.C. Policing During Summer 2020 Demonstrations*, 2021 U.S. Dist. LEXIS 128437, at *27.

  ii. The FAC adequately pleads *Monell* liability under a theory of failure to train and supervise.

The FAC includes detailed allegations about multiple deficiencies and inadequacies in the County's use-of-force or civil disorder and crowd control training and supervision. For example, the FAC alleges that crowd-control training instructed that not all protestors standing with their hands raised were peaceful, FAC ¶ 106; that what seem to be peaceful demonstrators are actually pawns and shields, *id*.; that they were permitted to use chemical weapons indiscriminately despite knowing they cause serious damage to the female reproductive system, *id*. ¶¶ 114, 229; and that there were "no such thing as a peaceful protester", *id*. ¶¶ 106, 226. The FAC further alleges that the County and Baxter instructed officers to collectively punish nonviolent demonstrators, even though using the force they had been trained to use, was palpably excessive. *Id*. ¶¶ 106, 226.

Likewise, the COUNTY and BAXTER overlook the many allegations that they affirmatively trained deputies to violate protesters' First Amendment rights. *See*, *e.g.*, FAC. ¶¶ 137–149. Specifically, the FAC alleges that Sheriff's Deputies are trained "exclusively on deterring, dispersing, and demoralizing protests and peaceful demonstrations" and taught "to police peaceful demonstrations in the same manner as they would a violent mob." *Id*. ¶¶ 147-48.

As to discipline, the FAC alleges that despite their use of extreme and excessive violence against protesters on September 2-6, 2020, Baxter failed to supervise or discipline any of his Sheriff's Deputies related to any force used protesters on those nights prior to Plaintiff's injury. *Id*. ¶¶ 220-21.

Thus, the FAC adequately pleads *Monell* liability against the County and Baxter based upon failure to train, supervise or discipline.

iii.    The FAC adequately pleads *Monell* liability under a theory of custom, tolerance or acquiescence.

The FAC alleges that the County and Baxter knew that numerous individuals were seriously hurt at protests on September 2-6, 2020, yet did nothing to change the response of the Sheriff's Deputies to the protesters to ensure that protesters like Plaintiff were not further injured on subsequent nights. *Id*. ¶¶ 220-21. Accepting the FAC's allegations as true, it is at least plausible that County and Baxter's alleged failure to act on their knowledge of potential constitutional violations over the course of several days of protests was the "moving force" behind subsequent violations of the same type on the night Plaintiff was injured.

The FAC also alleges that in June 2020—prior to the widespread unconstitutional acts of County Sheriff's deputies during the *Black Lives Matter* racial justice protests—"several Monroe County Legislators called on [the County Sheriff] to implement new protest training to ensure the safety of protesters at Black Lives Matter demonstrations." *Id.* ¶ 150. Those legislators specifically called on the Sheriff and County Executive to "***be sure that a plan is in place to ensure the mutual safety of all involved***" in the summer demonstrations. *Id.* BAXTER claimed the letter was a "political stunt", and refused to provide any specific details regarding how Sheriff's Deputies would ensure the safety of protesters during peaceful demonstrations. *Id.* ¶ 151.

Again, the County's claim that the Complaint does not plead facts to support the County's deliberate indifference is contradicted by the allegations in the FAC. *See*, *e.g.*, *In re N.Y.C. Summer 2020 Demonstrations*, 2021 U.S. Dist. LEXIS 128437, at *33-34 (quoting *Jenkins v. City of N.Y.*, 478 F.3d 76, 94 (2d Cir. 2007), in turn quoting *Walker*, 974 F.2d at 297).

iv.    The *Monell* Claim Is Adequately Pled Under The Standard For Alleging An Affirmative Municipal Policy.

The FAC alleges the existence of an affirmative municipal policy. "[W]here action is directed by those who establish governmental policy, the municipality is equally responsible

whether that action is to be taken only once or to be taken repeatedly;" and municipal liability "attaches where—and only where—a deliberate choice to follow a course of action is made from among various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question." *Pembaur* v. *City of Cincinnati,* 475 U.S. 469, 483 (1986); *see also Vives* v. *City of N.Y.,* 524 F.3d 346, 350 (2d Cir. 2008).

Here, the FAC pleads that MCSO deputies were ordered to suppress the protests by BAXTER, the final policymaker on police practices for the County. FAC ¶¶ 106, 109, 226. BAXTER coordinated with the City and RPD to create a Unified Command and trained and instructed RPD officers and Sheriff's Deputies to use force against "groups" of protesters, without first having made an individualized determination that there was a lawful basis to use force against any individual in the group based on their own individual conduct, as opposed to the perceived "group conduct. *Id.* ¶¶ 104-116, 182, 233. The widespread use of pepper spray, pepper-balls, tear gas, and other types of "less lethal" weapons belies any claim that individual sheriff's deputies were acting on their own rather than implementing a preconceived municipal plan.

Under *Pembaur*, when a "government's authorized decisionmakers" make "the decision to adopt [a] particular course of action," "it surely represents an act of official government 'policy'" and "where action is directed by those who establish governmental policy, the municipality is equally responsible whether that action is to be taken only once or to be taken repeatedly." 475 U.S. at 483. Thus, the County is liable for the unlawful policies adopted by BAXTER.

The natural, inevitable result of the County policies is exactly what transpired: deputies complying with official policies on the use of the "less lethal" force caused serious injuries to peaceful protestors who at most engaged in a misdemeanor by obstructing public sidewalks and streets, and in many cases, were doing nothing illegal whatsoever. Plaintiff has therefore shown a

"direct causal link" between the offending policies and the constitutional deprivations he suffered; in other words, his particular injuries were incurred because of the execution of the unlawful City and County policies. *See City of Canton* v. *Harris*, 489 U.S. 378, 385 (1989).

Moreover, the FAC pleads that BAXTER effectively ratified the MCSO's violent response. After many peaceful protesters were seriously injured at a May 30, 2020 protest,

> "several Monroe County Legislators called on BAXTER to implement new protest training to ensure the safety of protesters at Black Lives Matter demonstrations … The legislators drafted a letter to County Executive Adam Bello and BAXTER in which they made a number of requests related to public safety and the safety of protesters, and closed by stating, 'Once again, we believe the safety of both protesters, motorists, and law enforcement is of the utmost importance. Right here in Monroe County and across the Nation, we have seen the negative results when leaders are reactionary rather than proactive. Please be sure that a plan is in place to ensure the mutual safety of all involved.'"

FAC ¶ 150. "BAXTER claimed the letter was a "political stunt" and refused to provide any specific details regarding how Sheriff's Deputies would ensure the safety of protesters during peaceful demonstrations." *Id*. ¶ 151.

"[P]roof that a municipality's . . . authorized decisionmaker has intentionally deprived a plaintiff of a federally protected right necessarily establishes that the municipality acted culpably." *Bd. of Cnty. Comm'rs* v. *Brown*, 520 U.S. 397, 405 (1997). "Similarly, the conclusion that the action taken or directed by the [municipality's] authorized decisionmaker itself violates federal law will also determine that the municipal action was the moving force behind the injury of which the plaintiff complains." *Id*.

## II.   THE CAUSES OF ACTION AGAINST THE INDIVIDUAL DEFENDANTS ARE WELL PLED

The County has not met its burden to dismiss any of the claims against the "Richard Roe" defendants. Contrary to the County's argument that the FAC "lump[s] all the defendants together" and "fail[s] to allege Sheriff's deputies' personal involvement in any alleged constitutional

violations," County MOL at 10-11, the FAC pleads that the Richard Roe defendants engaged in specific, and unconstitutional, conduct on September 2, 3-4, 4-5 and 5-6 2020. FAC ¶¶ 26-93.

The County ignores these allegations. *See* County MOL at 13 ("no specific act is alleged on the part of any Sheriff's deputy"). Since there are, in fact, specific and detailed allegations against the Richard Roe Defendants, the County's motion on this point should be denied.

The County's argument that Plaintiff should not be afforded discovery is without merit. First, it is important to know what the terms of the "mutual aid" agreement were between the City and County as part of their unified response to the protests. See e.g. *Ferretti v. Vill. of Scotia*, 200 A.D.3d 1243 (3 Dept 2021) ("Indeed, other provisions of the Agreement make plain that once the responding party enters the scene, the operation is a joint one and, as far as issues of liability are concerned, all officers, whether from the requesting party or the responding party, are treated as if they were operating on their home turf as coemployees.")

Moreover, Plaintiff is entitled to discovery to identify the "Richard Roe" defendants. The County's position that the claims against the Richard Roe defendants should be summarily dismissed with prejudice has been repeatedly rejected by Courts in this circuit. *Davis* v. *Kelly*, 160 F.3d 917 (2d Cir.1998); *Murphy* v. *Goord*, 445 F.Supp.2d 261, 266 (W.D.N.Y. 2006) (permitting plaintiff to use a pseudonym for unknown defendants, take discovery to identify them, then amend his complaint to add their correct names); *Byrd* v. *Abate*, 964 F.Supp. 140, 145 (S.D.N.Y. 1997) (allowing late amendment naming former John Doe defendant to relate back under Rule 15(c), contrary to the usual rule, because defense counsel delayed identifying him until after the statute of limitations had run; to hold otherwise "would permit defense counsel to eliminate claims against any John Doe defendants merely by resisting discovery until the statute of limitations has ended").

The County does not contest the fact that Sheriff BAXTER and City / RPD officials created a unified protest response plan, that he ordered the Richard Roe Sheriff's Deputies to assist the RPD in policing the protests or that Sheriff's Deputies used force against Plaintiff and other protesters. Instead, the County simply argues that Plaintiff is not entitled to discovery to identify the Richard Roe defendants by name to identify which Sheriff's Deputies used force against the Plaintiff. This information is in the County's sole possession. Information such as Body Worn Camera recordings, assignment rosters, use of force reports, etc., are all records that exist and are necessary to identify the Richard Roe Sheriff's Deputies by name and determine who used force against the Plaintiff.

For all of these reasons, the County's argument that Plaintiff has not adequately pleaded the "personal involvement" of any individual Sheriff's Deputies and that she is not entitled to discovery to identify them by name is meritless and their motion should be denied.

## III.   THE FIFTH CLAIM FOR RELIEF (EXCESSIVE FORCE) AND THE SIXTH CLAIM FOR RELIEF (ASSAULT AND BATTERY) ARE WELL PLED (Responding to Points IV and V of the County's MOL)

As detailed in Point II, infra, the allegations in the FAC are clearly sufficient to plead that Plaintiff was subjected to excessive force and assaulted and battered by Sheriff's Deputies.

### A.   The Third Claim for Relief is Properly Pled Under the Fourth Amendment.

The Supreme Court has made clear that "[t]he application of physical force to the body of a person with the intent to restrain is a seizure, even if the force does not succeed in subduing the person." *Torres v. Madrid*, 141 S. Ct. 989, 993 (2021). Courts have repeatedly held that the use of chemical and "less lethal" weapons against protesters constitutes a seizure for Fourth Amendment purposes.[2] A Fourth Amendment seizure is judged based on objective reasonableness. *See Graham*

---

[2] *See Alsaada*, 536 F. Supp. 3d at 261 ("[T]he use of a chemical agent or other less-lethal crowd control tactics over a demonstrating crowd constitutes a seizure within the meaning of the Fourth Amendment."); *Downes-Covington*, 2020

v. *Connor*, 490 U.S. 386, 395 (1989). This requires balancing the "nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake," considering the severity of the crime, the potential threat from the individual, and any attempt to resist or evade arrest. *Id.* at 396.

A crowd of protestors does not change this analysis. The Second Circuit "has repeatedly emphasized that officers engaging with protesters must comply with the same principles of proportionality attendant to any other use of force." *Edrei* v. *Maguire*, 892 F.3d 525, 540–42 (2d Cir. 2018), *cert. denied*, 139 S.Ct. 2614 (2019). "Our sister circuits and district courts in this Circuit have routinely applied excessive force principles to crowd control situations." *Id.* (citing *Nelson* v. *City of Davis*, 685 F.3d 867, 882–83 (9th Cir. 2012); *Buck* v. *City of Albuquerque*, 549 F.3d 1269, 1289–90 (10th Cir. 2008); *Asociacion de Periodistas de Puerto Rico v. Mueller*, 529 F.3d 52, 59–62 (1st Cir. 2008); *Darrah* v. *City of Oak Park*, 255 F.3d 301, 306–08 (6th Cir. 2001); *Duran* v. *Sirgedas*, 240 Fed.Appx. 104, 112–13 (7th Cir. 2007) (summary order); *Piper* v. *City of Elmira*, 12 F. Supp. 3d 577, 589–96 (W.D.N.Y. 2014)).

"[I]t is unreasonable to use pepper spray, projectile bean bags, and pepper ball projectiles against individuals 'who were suspected of only minor criminal activity, offered only passive resistance, and posed little to no threat of harm to others.'" *Black Lives Matter Seattle-King Cty.*, 466 F.Supp 3d at 1214 (quoting *Nelson*, 685 F.3d at 885). Plaintiff was not rioting, she was protesting. *Abay*, 445 F. Supp. 3d at 1292 ("These are peaceful demonstrators, journalists, and medics who have been targeted with extreme tactics meant to suppress riots, not to suppress demonstrations."). "inadequate warnings" of the use of non-lethal force were given and "people

WL 7408725, at *10 (same); *Anti Police-Terror Project*, 477 F. Supp.3 d at 1086 (same); *Black Lives Matter Seattle-King Cnty.*, 466 F. Supp. 3d at 1214–15 (same); *Abay*, 445 F. Supp. 3d at 1291–92 (same); *Don't Shoot Portland*, 465 F. Supp. 3d at 1155 (same).

present in the area were [also] not warned that they had been declared to be part of a riot or that force would be used against them if they failed to disperse." *Otero v. Wood*, 316 F. Supp. 2d 612, 624 (S.D. Ohio 2004).

Pepper balls in particular were used unreasonably by Defendants. The indiscriminate use of pepper balls, tear gas and pepper spray was unreasonable. The use of pepper spray and tear gas, and the shooting of pepper balls, KIPS or rubber bullets in a way that hit peaceful protesters directly, rather than after bouncing off pavement, was punitive under the circumstances. Shooting pepper balls, KIPS or rubber bullets against peaceful protestors itself posed an unjustified and disproportionate risk of injury in light of the absence of violence by the Plaintiffs.

Plaintiff was not engaged in any violent or criminal behavior when she was attacked by Sheriff's Deputies and other law enforcement at protests on September 2-6; yet she was sprayed, gassed, struck with pepper balls, attacked with tear gas and other "less lethal" weapons—all pursuant to policy.

## B. Even if the Fourteenth Amendment Standard Applies, the FAC Adequately Pleads Excessive Force.

It is clearly established in this Circuit that when police purposefully, knowingly and/or recklessly use an objectively unreasonable degree of force against protesters, that constitutes excessive force under the Fourteenth Amendment. *Edrei*, 892 F.3d at 536. In analyzing protesters' claims that the NYPD's use of a Long Range Acoustic Device constituted excessive force in *Edrei*, the Second Circuit explained that *Kingsley v. Hendrickson*, 135 S. Ct. 2466 (2015), "held that excessiveness is measured objectively, then identified various considerations that inform the ultimate Fourteenth Amendment inquiry: whether the governmental action was rationally related to a legitimate governmental objective." 892 F.3d at 536. Applying that standard and the relevant

*Kingsley* factors, the Circuit held that plaintiffs' complaint stated a claim for excessive force under the Fourteenth Amendment because:

> "[1]the security threat posed by the protest was low [even though] … someone may have thrown a glass bottle … [2] [t]he most significant problem confronting law enforcement appears to have been traffic disruption caused by protesters walking in the street [but] … this is the sort of public safety risk common to large public demonstrations, not necessarily an imminent threat warranting a significant use of force … [3] there is no indication that plaintiffs were 'actively resisting' … [4] the disparity between the threat posed by the protest and the degree of force is stark" … [and nothing in the complaint suggests that] the officers tried to temper or to limit the amount of force."

*Id*. at 537–38 (internal citations and quotations omitted).

Here, for the reasons outlined in the prior section regarding the Fourth Amendment excessive force analysis, the FAC clearly also pleads a viable Fourteenth Amendment excessive force claim under *Kingsley* and *Edrei*.

### C.    Plaintiff's Assault and Battery Claims are Well Pled.

Defendants argue that because the FAC alleges does not identify specific Sheriff's deputies who used force against her, the assault and battery claims must be dismissed. Again, this argument without merit. As detailed above in Point II, numerous district courts across the County have denied motions to dismiss and granted motions for preliminary injunctions brought by protesters to stop police from using chemical weapons and other "less lethal" weapons "indiscriminately", finding that such indiscriminate use of force constituted excessive force. Because the FAC adequately pleads excessive force, it necessarily adequately pleads assault and battery.

Plaintiff is entitled to discovery to identify the specific Sheriff's Deputies who were involved in policing the protest on the nights of September 3-6, 2020 and who used force against him on those various nights.

IV.    **PLAINTIFF ADEQUATELY PLED THE COUNTY DEFENDANTS VIOLATED HER FIRST AMENDMENT RIGHTS (Responding to Point VI of the County MOL)**

The FAC pleads First Amendment violations against the COUNTY defendants under several theories. In their memorandum, the COUNTY defendants only move to dismiss the First Amendment Retaliation claim, but do not move to dismiss the Fifth Claim for Relief under any of the other theories of First Amendment violations clearly pled in the FAC.

A.    **Restriction of Speech.**

The County defendants ignore the fact that the FAC alleges First Amendment restrictions of Plaintiff's speech in a traditional public forum on matters of public concern.

The FAC alleges that on September 2, 3-4, 4-5, and 5-6, Plaintiff and other protesters were engaged in peaceful protests on the public streets and sidewalks of downtown Rochester, voicing their objections to racist police violence, when Sheriff's Deputies and RPD officers kettled them, and attacked them with unprovoked force. See generally FAC ¶¶ 29-93. In these four days, defendants repeatedly fired tear gas, pepper balls and other "less lethal" weapons into the crowd and physically charged at the protestors to "disperse" the peaceful gatherings. *Id*.

Plaintiff has alleged an unconstitutional restriction on protected speech. The Supreme Court has "repeatedly referred to public streets as the archetype of a traditional public forum." *Frisby* v. *Schultz*, 487 U.S. 474, 480 (1988). Plaintiff and other protesters were protesting an issue of pressing public concern: police killings of unarmed Black citizens. Organized political protest is a form of "classically political speech." *Boos* v. *Barry*, 485 U.S. 312, 318 (1988). "[T]he First Amendment safeguards an individual's right to participate in the public debate through political expression and political association." *McCutcheon* v. *Fed. Election Com'n*, 572 U.S. 185, 203 (2014). That safeguard "reflects a profound national commitment to the principle that debate on public issues should be uninhibited, robust, and wide-open." *Id*. (internal citations omitted).

For that reason, "speech on public issues occupies the 'highest rung of the hierarchy of First Amendment values,' and is entitled to special protection." *Connick* v. *Myers*, 461 U.S. 138, 145 (1983) (quoting *NAACP* v. *Claiborne Hardware Co.*, 458 U.S. 886, 913 (1982) (internal quotations and citation omitted)). Political speech, especially that involving controversial issues, is "the essence of First Amendment expression." *McIntyre* v. *Ohio Elections Comm'n*, 514 U.S. 334, 347 (1995). That protection extends to assembly. "Effective advocacy of both public and private points of view, particularly controversial ones, is undeniably enhanced by group association." *NAACP* v. *Alabama*, 357 U.S. 449, 460 (1958).

"Restrictions on speech in traditional or designated public fora receive strict scrutiny, which means they must be 'necessary to serve a compelling state interest' and 'narrowly drawn to achieve that interest.'" *Brindley* v. *City of Memphis*, 934 F.3d 461, 467 (6th Cir. 2019) (internal citations omitted). As Plaintiff pled in the FAC, she and other protesters exercised their right on public fora: the Court Street Bridge and other public streets and sidewalks in downtown Rochester.

In cordoning off traffic to permit the demonstrators to protests, Defendants decided to honor the public forums of the streets and sidewalks where the peaceful protests occurred. Defendants cannot turn around and claim they had the right to brutalize Ms. Flannery and everyone who was in the roadway protesting, especially when no clear dispersal orders were issued. *See Vodak* v. *City of Chicago*, 639 F.3d 738, 746-47 (7th Cir. 2011) ("the Fourth Amendment does not permit the police to say to a person go ahead and march and then, five minutes later, having revoked the permission for the march without notice to anyone, arrest the person for having marched without police permission. This would be 'an indefensible sort of entrapment by the State'" (*quoting Cox* v. *Louisiana*, 379 U.S. 536, 571 (1965)).

Because the County defendants do not address this theory of First Amendment restrictions in their memorandum, their motion to dismiss the Seventh Claim for Relief must be denied.

### B.        The FAC Adequately Pleads First Amendment Retaliation.

"To plead a First Amendment retaliation claim a plaintiff must show: (1) he has a right protected by the First Amendment; (2) the defendant's actions were motivated or substantially caused by his exercise of that right; and (3) the defendant's actions caused him some injury." *Dorsett v. Cnty. of Nassau,* 732 F.3d 157, 160 (2d Cir. 2013).

In its memorandum, the County cites to *MacPherson v. Town of Southampton*, 738 F. Supp. 2d 353, 369 (E.D.N.Y. 2010) and *Friedl v. City of New York*, 210 F.3d 79, 85 (2d Cir. 2000) to claim that a plaintiff must allege that "his first amendment rights were actually chilled." MOL p. 12. This citation is misplaced.

In *Dorsette*—which was decided three years after the EDNY's decision in *MacPherson* and 13 years after the Circuit's decision in *Friedl*—the Circuit clarified that "[c]hilled speech is not the *sine qua non* of a First Amendment claim"; rather, Plaintiffs may show *"either* that [their] speech has been adversely affected by the government retaliation or that [they] ha[ve] suffered some other concrete harm." *Dorsett v. Cnty. of Nassau,* 732 F.3d at 160. (emphasis in original). The FAC adequately pleads the elements outlined in *Dorsette*, so the County's motion to dismiss the First Amendment Retaliation claim must be denied.

Moreover, the COUNTY's claim that "Plaintiff has failed to allege, as required, that any action taken by the County, Sheriff, or Sheriff's deputies deprived Plaintiff of her rights under the First Amendment", County MOL p. 15, simply ignores the allegations in the FAC. The entire thrust of the FAC is that Defendants attacked Plaintiff while she was present on public streets and sidewalks in downtown Rochester in retaliation for engaging in racial justice protests.

The allegations in the FAC are more than enough to make out a First Amendment retaliation claim, and the County defendants cannot demonstrate that that their actions in using grossly excessive and unnecessary force against Plaintiff and other protesters was "necessary to serve a compelling state interest" and "narrowly drawn to achieve that interest."

Defendants' response to the protesters cannot be explained by any motivation other than retaliation. As in *Black Lives Matter Seattle-King Cty.*, "[t]he use of indiscriminate weapons against all protesters—not just the violent ones—supports the inference that SPD's actions were substantially motivated by Plaintiffs' protected First Amendment activity." 466 F.Supp 3d at 1214; *see also Don't Shoot Portland*, 465 F.Supp.3d 1150, 1156 (D. Or. 2020) ("These incidents demonstrate that preventing criminal activity near the Justice Center was not the sole purpose of PPB's use of force. Instead, officers may have been substantially motivated by an intent to interfere with Plaintiffs' constitutionally protected expression.").

## V.  THE FAILURE TO INTERVENE CLAIM IS WELL PLED (Responding to Point VII of the County's MOL)

The County's motion to dismiss the failure to intervene claim must be denied because they ignore the facts pled in the FAC. "It is widely recognized that all law enforcement officials have an affirmative duty to intervene to protect the constitutional rights of citizens from infringement by other law enforcement officers in their presence." *Anderson* v. *Branen*, 17 F.3d 552, 557 (2nd Cir. 1994). An officer who is present and fails to intervene to prevent other law enforcement officers from infringing the constitutional rights of citizens is liable under §1983 if that officer had reason to know: (1) that excessive force was being used; (2) that a citizen has been unjustifiably arrested, or (3) that any constitutional violation has been committed by a law enforcement official; and the officer had a realistic opportunity to intervene to prevent the harm from occurring. *Yang* v. *Hardin*, 37 F.3d 282, 285 (7th Cir. 1994).

The FAC pleads that Plaintiff was harmed by Sheriff's Deputies and RPD officers acting in concert on four consecutive days: September 2, 3-4, 4-5, and 5-6. On those days, some law enforcement officers intentionally harmed Plaintiff and others failed to intervene to prevent her from being harmed. In the context of this case, where hundreds of Sheriff's deputies responded to protests and acted jointly with RPD officers to harm Plaintiff and other protesters, discovery is necessary to identify which officers directly harmed Plaintiff and which ones failed to intervene.

Moreover, the FAC adequately alleges a failure to intervene claim against BAXTER, who could have prevented the City and the RPD from devising and executing its unlawful protest response plan. Instead, he coordinated with the City and RPD to devise and execute a joint protest response plan, which affirmatively violated protesters rights. FAC ¶¶ 21, 111, 114.

## VI.   THE NEGLIGENT TRAINING, SUPERVISION AND DISCIPLINE CLAIM IS WELL PLED AGAINST BAXTER (**Responding to Point VII of the County's MOL**)

In their memorandum, the County defendants completely misstate the law on negligent, hiring, training and supervision claims against sheriffs under New York law.

Under New York law, a sheriff may not be held vicariously liable for the torts committed by its employees while they are performing a criminal justice function. *Cash* v. *Cnty. of Erie*, 2007 WL 2027844, \*5 (W.D.N.Y.2007) ("[i]t is equally well established that a[s]heriff cannot be held vicariously liable for deputies' negligent acts committed while performing criminal justice functions") (*citing Barr* v. *Albany Cnty.*, 50 N.Y.2d 247, 257 (1980)).

In contrast to *respondeat superior* liability, it is clearly established that a sheriff may be held directly liable for his own negligent conduct, including a failure to train or supervise his subordinates. *See Ryan v. Moss*, No. 11-CV-6015P, 2013 WL 956722, at \*19 (W.D.N.Y. Mar. 12, 2013) ("a sheriff may be held liable for his own negligent conduct, including a failure to train or supervise his subordinates"), *citing Cash* v. *Cnty. of Erie,* 2007 WL 2027844 at \*5 (W.D.N.Y.

2007) ("a cause of action sounding in negligence is legally sustainable against a [sheriff] when the injured party demonstrates that he was injured due to the negligent training and supervision of a law enforcement officer") (quoting *Barr v. Albany Cnty.,* 50 N.Y.2d 247, 257(1980)); *Pickett v. Cnty. of Orange,* 879 N.Y.S.2d 182, 184 (2d Dept 2009) ("although the [s]heriff could not be held liable for the acts or omissions of his deputies ... ***he could be held liable for failure to properly train and instruct his deputies***")(citation omitted); *Bardi* v. *Warren Cty. Sheriff's Dept,* 194 A.D.2d 21, 24 (3 Dept 1993)(same); *Hooper* v. *Meloni,* 123 A.D.2d 511, 511 (4 Dept 1986) (same).

It is precisely because Sheriffs in New York cannot be held vicariously liable for the negligent acts of their subordinates that they can be held directly liable for their own negligent conduct, including a failure to train or supervise his subordinates. Thus, the County's claim that, "this claim survives only if it is shown that the alleged tortfeasor acted outside the scope of their employment" is legally frivolous. MOL p. 18.

Every single case cited by the County in its brief deals with either municipal or private employers, who, unlike Sheriffs, can be held vicariously liable for the conduct of their subordinates. See *Velez* v. *City of N.Y.,* 730 F.3d 128, 136 (2d Cir. 2013) (against the City of New York); *Lamb* v. *Baker,* 152 A.D.3d 1230, 1231 (4 Dept 2017) (against a private medical practice and individual doctor); *Seiden* v. *Sonstein,* 127 A.D.3d 1158, 1160 (2 Dept 2015)[3]

Because the County misstates clearly established law, their motion to dismiss the Ninth Claim for Relief must be denied.

## VII.   THE NEGLIGENT PLANNING CLAIM IS ADEQUATELY PLED UNDER *FERREIRA* V. *CITY OF BINGHAMTON*, 2022 NY SLIP OP 01953 (MAR. 23, 2022) (Responding to Point IX of the County's MOL)

In *Ferreira* v. *City of Binghamton*, the Court of Appeals held that where law enforcement

---

[3] Notably, in their brief, the County incorrectly cites the Court's holding in *Seiden*. In fact, the quoted text in the County's parenthetical citation appears nowhere in the Court's holding.

takes control of a dangerous situation that they affirmatively created, the municipality owes the plaintiff a special duty.  2022 NY Slip Op 01953 at *5-6 (Mar. 23, 2022).

In *Ferreira*, the Court expanded the reach of the third of the three methods of proving "special duty" under New York case law:

1) The plaintiff belonged to a class for whose benefit a statute was enacted;

2) That the government worker formed a "special relationship" with the plaintiff; and

3) **The municipality took positive control of a known and dangerous safety condition.**

*Applewhite v Accuhealth, Inc.*, 995 N.E.2d 131, 135 (2013)

In *Ferreira*, the Court found that plaintiff had established a special duty under the "took positive control of a known and dangerous safety condition" method. *Id*. The Court relied on one of the few Court of Appeals cases that has addressed that method: *Smullen* v *City of New York*, 28 NY2d 66 (1971). There, a municipal inspector on a worksite informed the decedent that a trench did not need to be shored just before it collapsed, killing the decedent. The inspector was the only person in authority then present. The Court found that a special duty was established because the inspector took positive action in assuming direction and control over the dangerous situation.

The facts here fit squarely within the holding of *Ferreira*. The FAC pleads that the COUNTY and BAXTER, acting in concert with the CITY and RPD, affirmatively created a "dangerous situation" by negligently planning the protest response. Specifically, BAXTER and City policymakers created a dangerous situation by developing protest response plan where they armed law enforcement officers with military-grade equipment, including tear gas and pepper spray, 40 millimeter blunt-impact projectiles, pepper balls, flash-bang grenades and other supposedly "less-than-lethal" munitions. *See e.g.,* FAC ¶ 107-109.

On the nights in question, RPD officers and Sheriff's Deputies "affirmatively took control" of the "dangerous situation" they had created. For example, on September 4, 2020, Defendants led the protest march onto the Court Street Bridge where Plaintiff and hundreds of other protesters were "kettled" and trapped; when they had nowhere to go, then suddenly they were attacked with chemical weapons and other "less lethal" weapons and then attacked with batons. FAC ¶ 61-76. Similarly on September 5, 2020, Defendants led the protest march to the intersection of Broad Street and Exchange Blvd., where they again kettled protesters in a confined area, before attacking them with tear gas and other chemical weapons, rushing them and physically striking them with fists and batons. *Id*. ¶¶ 80-93.

In developing and implementing the protest response plan, BAXTER and the County had months—from at least June 4, 2020 to September 2020—to ensure its officers were properly trained, and to implement policies to ensure that Sheriff's Deputies respected protesters' First Amendment rights and did not use excessive force against them. FAC ¶¶ 104-116.

Thus, Plaintiff has adequately pled that the County owed Plaintiff and other protesters a special duty under *Ferreira*, and that its breach of that duty caused Plaintiff's injuries. For these reasons, the County's motion to dismiss the Negligent Planning claim should be denied.

## VIII.  THE NEGLIGENCE CLAIM—THE THIRTEENTH CLAIM FOR RELIEF—IS WELL PLED (Responding to Point X of the County's MOL)

The County's argument that Plaintiff is precluded from bringing claims for intentional torts and negligence is simply incorrect, because the FAC alleges that Plaintiff was harmed in different ways at numerous incidents at four consecutive days of protests on September 2-6, 2020.

It is clearly established that "[a] plaintiff is at liberty to plead different theories, even if they are inconsistent with one another, and the court must accept each sufficiently pleaded theory at face value, without regard to its inconsistency with other parts of the complaint." *Doe* v.

24

*Columbia Univ.*, 831 F.3d 46, 48 (2d Cir. 2016), *citing* FED. R. CIV. P. 8(d)(3) ("A party may state

as many separate claims ... as it has, regardless of consistency."); *Gregory v. Daly*, 243 F.3d 687,

701 n. 12 (2d Cir. 2001).

Second, as explained in Point VII, *infra*, plaintiff had pleaded a special duty under *Ferreira*

v. *City of Binghamton*. *See also* FAC ¶ 225 (BAXTER had a special duty to ensure that the rights

of Plaintiff and other journalists, legal observers and protesters … were not violated")

Third, a negligence claim cannot be dismissed where, as here, the Deputies' actions are

"inconsistent with acceptable police practice[.]" *Arias* v. *City of New York*, 22 A.D.3d 436, 437

(2d Dep't 2005); FAC ¶¶ 184, 192. New York Courts have consistently held that, "[i]t is settled

that negligence cases by their very nature do not lend themselves to summary dismissal since often,

even if all parties are in agreement as to the underlying facts, the very question of negligence is

itself a question for jury determination." *McCummings* v. *New York City Transit Auth.*, 81 N.Y.2d

923, 926 (1993) (internal citations and quotations omitted). Often that jury question is whether a

law enforcement officer's actions were consistent with their training.

Discovery of the training received by deputies and County policies are necessary to the

determination of whether they acted negligently under the circumstances. Thus, the COUNTY's

motion to dismiss the negligence claim against the individual deputies should be denied.

## CONCLUSION

Plaintiff's claims are well pled. Plaintiff is entitled to discovery from the County related to

each element of her claims. For all the aforementioned reasons, the County's motion to dismiss

should be denied in its entirety.

Dated: May 31, 2022                        Respectfully Submitted,
      New York, New York


                            BY:        ~//s//~
                                       Elliot Dolby Shields

Roth & Roth, LLP
Co-Counsel for Plaintiff
192 Lexington Avenue, Suite 802
New York, New York 10016
Phone: (212) 425 1020