UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

STEPHANIE WOODWARD,

                              Plaintiff,

                                                         Case # 21-CV-6685-FPG

v.

                                                            DECISION AND ORDER

THE CITY OF ROCHESTER, et al.,

                              Defendants.
_____

## INTRODUCTION

       This is one of many cases pending before the Court that arises out of protests that erupted in the City of Rochester in September 2020 following the release of news that Daniel Prude, an unarmed black man, died during an encounter with police in March 2020. Plaintiff Stephanie Woodward—who is paralyzed from the waist down and uses a wheelchair and alleges she was injured during the protests—filed this action in state court against the City of Rochester ("City"), Rochester Police Department ("RPD") John Doe Police Officers 1-200, RPD Officer Richard Arrowood, RPD Officer Stephanie Burgstrom, RPD Officer Eric Schiffman, the County of Monroe (the "County"), Monroe County Sheriff Todd Baxter ("Baxter"), and Richard Roe Sheriff's Deputies 1-200,[1] for multiple federal and state claims. The City Defendants removed the case to federal court. ECF No. 1.

       On April 7, 2022, Plaintiff filed an Amended Complaint. ECF No. 12. In it, Plaintiff raises 14 claims: (1) municipal/*Monell* liability against the City for alleged violations of the First, Fourth, and Fourteenth Amendments, pursuant to 42 U.S.C. § 1983; (2) municipal/*Monell* liability against

---

[1] John Doe police officers, Arrowood, Burgstrom, Schiffman, ("the RPD Officers"), and the City are collectively referred to as "City Defendants." The County, Baxter, and Richard Roe Sheriff's deputies are collectively referred to as "County Defendants." The RPD Officers and Sheriff's deputies are collectively referred to as "Individual Officers." All defendants are collectively referred to as "Defendants."

the County and Baxter for alleged violations of the First, Fourth, and Fourteenth Amendments, pursuant to § 1983; (3) excessive force against all Defendants, pursuant to § 1983; (4) assault and battery against all Defendants, pursuant to New York State law; (5) First Amendment infringement and retaliation against all Defendants, pursuant to § 1983; (6) failure to intervene against all Defendants, pursuant to § 1983; (7) negligent training, supervision, and discipline against Baxter, pursuant to New York State law; (8) negligent planning of the protest response against Baxter, pursuant to New York State law; (9) negligent planning of the protest response against the City, pursuant to New York State law; (10) negligence against the Individual Officers, pursuant to New York State law; (11) discrimination in violation of Title II of the Americans with Disabilities Act ("ADA"), against the City and County; (12) discrimination in violation of Section 504 of the Rehabilitation Act, 29 U.S.C. § 794 *et seq.*, against the City and County; (13) discrimination in violation of New York State Human Rights Law, against the City, Schiffman, Arrowood, and Burgstrom; and (14) municipal/*Monell* liability against the City for alleged discrimination against wheelchair users, pursuant to § 1983.

On May 2, 2022, the County Defendants filed a motion to dismiss all of the claims asserted against them. ECF No. 14. The motion is now fully briefed. Because the City Defendants filed an answer to the Amended Complaint, ECF No. 16, the Court will only evaluate the claims against the County Defendants. For the reasons set forth below, the County Defendants' motion to dismiss is GRANTED IN PART and DENIED IN PART.

**FACTUAL BACKGROUND**

The following facts are taken from Plaintiff's Amended Complaint and accepted as true for purposes of deciding the motion to dismiss.

Plaintiff has a visible physical disability: she is paralyzed from the waist down, cannot walk, and requires the use of a wheelchair. ECF No. 12 ¶¶ 31-32. As a result of her paralysis, Plaintiff has limited bladder function. *Id.* ¶ 34.

Plaintiff participated in protests on the night of September 5-6, 2020. That night, Individual Officers trapped Plaintiff and other peaceful protestors at the intersection of Broad Street and Exchange Boulevard and indiscriminately attacked them with flash bang grenades, tear gas, and pepper balls. *Id.* ¶¶ 42-45. At around 10:30 p.m., an Individual Officer threw a tear gas cannister at Plaintiff "which went off when it was underneath her wheelchair and engulfed her in tear gas." *Id.* ¶ 46.

When Plaintiff was finally able to turn her wheelchair around, she discovered that the crowd behind her had dispersed. *Id.* ¶ 47. As she attempted to retreat, Individual Officers shot Plaintiff in the back with pepper balls or other projectiles; at least one pepper ball hit Plaintiff in the right shoulder. *Id.* ¶ 48. As a result of these attacks, Plaintiff sustained irritation to her skin, eyes, mouth, nose, and lungs. She has also suffered a shoulder injury from being shot, which has impeded her ability to use her wheelchair. She has also experienced psychological trauma, and menstrual irregularities and she has been unable to conceive despite trying for over one year. *Id.* ¶¶ 56-59.

Plaintiff joined another protest on the morning of September 16, 2020, following a "sleep-in" protest in front of City Hall. *Id.* ¶¶ 111-12. Approximately five minutes after she arrived, RPD Officers pushed Plaintiff in her wheelchair to the street corner and then seized and arrested her. *Id.* ¶¶ 115-16. Plaintiff immediately informed RPD Officers that "she would eventually have to urinate, and that part of her disability is that she is unable to hold it for long periods of time. Thus,

when she felt the urge to urinate, she would have to go immediately, or she would urinate on herself." *Id.* ¶ 19.

RPD Officers called their supervisors and informed them that they did not know how they would transport Plaintiff to the Public Safety Building ("PSB"). *Id.* ¶ 118. They discussed the possibility of lifting Plaintiff out of her wheelchair and into a regular transport vehicle, like those that transported detained protestors who were not in wheelchairs. *Id.* ¶¶ 120-21. But RPD Officers were unable to transport Plaintiff to the PSB, where she could have used the bathroom, because they "do not have any wheelchair accessible vehicles." *Id.* ¶ 126. Instead, Plaintiff was detained on the sidewalk for approximately two hours. *Id.* ¶ 122. During that time, she repeatedly informed RPD Officers that she had to urinate, but they did not permit her to use the bathroom. *Id.* ¶ 123. As a result, Plaintiff urinated on herself. *Id.* ¶ 124. Eventually, Plaintiff was given an appearance ticket and told she could leave. *Id.* ¶ 125.

Plaintiff alleges, *inter alia*, that Defendants failed to intervene on Plaintiff's behalf, that the police response to the protests and protestors was part of an unconstitutional municipal practice, that Defendants failed to properly train officers in proper protest responses, that Defendants discriminated against Plaintiff based on her disability, that Defendants retaliated against her based on her speech, and that Defendants acted negligently in planning for and responding to the protests.

## LEGAL STANDARD

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter . . . 'to state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim for relief is plausible when the plaintiff pleads facts sufficient to allow the Court to draw reasonable

inferences that the defendant is liable for the alleged misconduct. *Id.* In reviewing a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court must accept as true the factual allegations in the complaint and draw all reasonable inferences in favor of the plaintiff. *See Nechis v. Oxford Health Plans, Inc.*, 421 F.3d 96, 100 (2d Cir. 2005). At the same time, the Court is not required to credit "[l]egal conclusions, deductions, or opinions couched as factual allegations . . . [with] a presumption of truthfulness." *In re NYSE Specialists Sec. Litig.*, 503 F.3d 89, 95 (2d Cir. 2007) (internal citations and quotations omitted). The "touchstone for a well-pleaded complaint under Federal Rules of Civil Procedures 8(a) and 12(b)(6) is plausibility." *In re AOL Time Warner, Inc. Sec. Litig.*, 503 F. Supp. 2d 666, 670 (S.D.N.Y. 2007) (citing *Twombly*, 550 U.S. at 560-61). To meet this plausibility standard, the factual allegations must permit the Court "to infer more than the mere possibility of misconduct." *Iqbal*, 556 U.S. at 679.

## DISCUSSION

**I.      First and Second Claims: Municipal Liability Pursuant to *Monell***

In her First and Second Claims, Plaintiff seeks to hold the City, the County, and Baxter liable for First and Fourth Amendment violations under *Monell v. Dep't Soc. Servs.*, 436 U.S. 658, 693 (1978). In essence, Plaintiff asserts that the individual officers who caused her injuries were acting in accordance with the City and the County's unconstitutional customs or policies relating to the use of force during peaceful protests. County Defendants, for their part, argue that Plaintiff has not adequately pled such a custom or policy. For the reasons explained below, the Court disagrees and permits the *Monell* claim to proceed.

   **A.      Legal Standard**

"[A] local government is liable under § 1983 for its policies that cause constitutional torts." *McMillian v. Monroe Cnty., Alabama*, 520 U.S. 781, 784 (1997); *see Monell*, 436 U.S. at 693. A

plaintiff who seeks to impose liability on local governments pursuant to 42 U.S.C. § 1983 must demonstrate that "action pursuant to official municipal policy" caused the injury. *Monell*, 436 U.S. at 692. "Official municipal policy includes the decisions of a government's lawmakers, the acts of its policymaking officials, and practices so persistent and widespread as to practically have the force of law." *Connick v. Thompson*, 563 U.S. 51, 61 (2011) (citing *Monell*, 436 U.S. at 691) (additional citations omitted). A plaintiff may demonstrate a policy or custom exists by showing:

> (1) a formal policy officially endorsed by the municipality; (2) actions taken by government officials responsible for establishing the municipal policies that caused the particular deprivation in question; (3) a practice so consistent and widespread that, although not expressly authorized, constitutes a custom or usage of which a supervising policy-maker must have been aware; or (4) a failure by policymakers to provide adequate training or supervision to subordinates to such an extent that it amounts to deliberate indifference to the rights of those who come into contact with the municipal employees.

*Jones v. Westchester Cnty.*, 182 F. Supp. 3d 134, 158 (S.D.N.Y. 2016) (quoting *Brandon v. City of New York*, 705 F. Supp. 2d 261, 276-77 (S.D.N.Y. 2010)).

"Although there is no heightened pleading requirement for complaints alleging municipal liability under § 1983, . . . a complaint does not suffice if it tenders naked assertions devoid of further factual enhancement." *Green v. City of Mount Vernon*, 96 F. Supp. 3d 263, 301-02 (S.D.N.Y. 2015) (internal quotation marks and brackets omitted). "To survive a motion to dismiss a municipal liability claim, a plaintiff must allege facts tending to support, at least circumstantially, an inference that a municipal policy or custom exists." *McLennon v. City of New York*, 171 F. Supp. 3d 69, 95 (S.D.N.Y. 2016) (internal quotation marks and ellipsis omitted); *see also Cruz v. Vill. of Spring Valley*, No. 21-CV-2073, 2022 WL 428247, at *6 (S.D.N.Y. Feb. 11, 2022) (collecting cases). Put simply, to allege "there is a policy does not make it so." *Vassallo v. City of New York*, No. 15-CV-7125, 2016 WL 6902478, at *14 (S.D.N.Y. Nov. 22, 2016) (internal

quotation marks omitted); *see also Cruz*, 2022 WL 428247, at *6 ("Plaintiff cannot, through conclusory allegations, merely assert the existence of a municipal policy or custom, but must allege facts tending to support, at least circumstantially, an inference that such a municipal policy or custom exists." (internal quotation marks omitted)).

### B. First Claim – Municipal Liability for Protests – City

Because the City filed an answer instead of filing a motion to dismiss, Plaintiff's First Claim against the City will proceed.

### C. Second Claim – Municipal Liability for Protests – County and Baxter

The allegations against the County and Baxter largely mirror those Plaintiff asserted against the City. Plaintiff alleges that the County and Baxter's responses to the protests were based on their objection to the message the protestors were expressing, and that the County and Baxter's actions or inactions led to excessive force being used against protestors. However, for the reasons explained below, the County and Baxter's motion to dismiss the municipal liability claim is denied.

The County and Baxter take issue with Plaintiff's reference in the Amended Complaint to the County's "Hazard Mitigation Plan," under which the County trained Sheriff's deputies to use force for both "peaceful demonstrations or acts of violence." ECF No. 12 ¶ 98. The County and Baxter argue that this Hazard Mitigation Plan is intended to reduce the potential impact of natural hazards and therefore "clearly has nothing to do with training for Sheriff's deputies for responding to a protest." ECF No. 14-3 at 10. However, the County and Baxter ignore the crux of Plaintiff's other allegations, which, like those against the City, detail unconstitutional municipal policies, practices, and training failures.

For example, Plaintiff alleges that Baxter and the County subscribed to a theory that Black Lives Matter protests were led by outside agitators, that violent protestors would use nonviolent

protestors as human shields, that the County and Baxter coordinated with the City and RPD to develop a coordinated protest response plan that included using disproportionate violence centered on retaliation for the message the protestors were expressing, that Baxter and the County failed to train Sheriff's deputies to meaningfully differentiate between peaceful protestors and violent ones, and instead actively trained Sheriff's deputies to treat lawful First Amendment activity the same as "violent mobs." *See* ECF No. 12 ¶ 96. These allegations plausibly allege an unconstitutional custom or practice.

The Amended Complaint does not contain specific allegations of prior instances in which the Sheriff's Office used excessive force against protestors. The County and Baxter argue that the absence of such allegations demonstrates that neither could have had knowledge that any problems were widespread. However, Plaintiff *does* allege that prior to the protests which are the subject of this lawsuit, County legislators called on the Sheriff's Office to implement new training protocols to correct its deficient practices. *Id.* ¶ 108. Although this is a close call, the Court determines at this early stage that such factual allegations are sufficient to survive the motion to dismiss.

**II.      Third & Fourth Claims: Assault & Battery & Excessive Force**

Plaintiff's excessive force and assault and battery claims were brought against all Defendants but only the County Defendants move to dismiss those claims.

To the extent Plaintiff asserts her excessive force claim against Baxter, that claim will not be dismissed. "A supervisory defendant must have been personally involved in a constitutional deprivation to be held liable under § 1983." *Bryant v. Ciminelli*, 267 F. Supp. 3d 467, 475 (W.D.N.Y. 2017). The Amended Complaint contains no allegations that Baxter personally used excessive force on Plaintiff. However, as explained below, Plaintiff alleges that unknown Sheriff's deputies used excessive force against her. The Second Circuit has recognized "the

appropriateness of maintaining supervisory personnel as defendants in lawsuits stating a colorable claim until the plaintiff has been afforded an opportunity through at least brief discovery to identify the subordinate officials who have personal liability." *Davis v. Kelly,* 160 F.3d 917, 921 (2d Cir. 1998). Accordingly, the Court will not dismiss Baxter from the case until Plaintiff has an opportunity to conduct discovery as to the identities of the Sheriff's deputies. If such discovery reveals the identifies of the Sheriff's deputies, Baxter may again move to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) or 56. *Murphy v. Goord*, 445 F. Supp. 2d 261 (W.D.N.Y. 2006) (denying supervisor's motion to dismiss so that plaintiff could conduct discovery to ascertain identity of John Doe defendants).

The remaining County Defendants argue that the claims against individual, unnamed sheriffs must be dismissed because Plaintiff's allegations constitute impermissible "group pleading" and that Plaintiff has not alleged that County Defendants used the requisite force. ECF No. 14-3 at 14-15.

First, the County Defendants argue that Fourth Amendment liability is premised on the use of "excessive force when detaining or arresting individuals," and that the Amended Complaint contains no allegation that any County Defendant—as opposed to any City Defendant—used excessive force against Plaintiff during her arrest. ECF No. 14-3 at 10; *see Jones v. Parmley*, 465 F.3d 46, 61 (2d Cir. 2006).

But, at this stage, Plaintiff has adequately alleged that Sheriff's Deputies used military-grade weapons and chemical weapons against her, causing psychological and bodily injuries and damaging her reproductive system. *See* ECF No. 12 ¶¶ 56-59. Courts have routinely concluded that the use of such weapons against protestors constitutes a seizure for purposes of the Fourth Amendment. *See Edrei v. Maguire*, 892 F.3d 525, 540-42 (2d Cir. 2018) ("Our sister circuits and

9

district courts in this Circuit have routinely applied excessive force principles to crowd control situations.").

The County Defendants argue that Plaintiff tacked on allegations of Sheriff's Deputies using excessive force in an attempt to draw unnamed law enforcement officers into the allegations.[2] ECF No. 14-3 at 14-15. A complaint that "lump[s] all the defendants together in each claim provid[es] no factual basis to distinguish their conduct . . . . fail[s] to satisfy [the] minimum [pleading] standard." *Atuahene v. City of Hartford*, 10 F. App'x 33, 34 (2d Cir. 2001) (summary order) (internal quotations omitted). But Plaintiff has not lumped all Defendants' conduct together. Rather, she specifically claims that unknown Sherriff's Deputies used chemical weapons on her during the protest. That is a narrow allegation regarding an as-of-yet unknown deputy or deputies. Given the presence of law enforcement from multiple jurisdictions at the protests, such a claim is not implausible. The Court will permit Plaintiff to conduct discovery to determine the identities of any such Sheriff's Deputies.

The County Defendants move to dismiss the Fourth Claim for assault and battery for the same reasons they move to dismiss the Third Claim for excessive force. "Courts in the Second Circuit have found that [f]ederal excessive force claims and state law assault and battery claims against police officers are nearly identical." *John v. City of New York*, 406 F. Supp. 3d 240, 245 (E.D.N.Y. 2017) (internal quotation marks omitted). Therefore, both the Third Claim for excessive force and Fourth Claim for assault and battery may proceed.

---

[2] The County Defendants repeat this same argument as a reason to dismiss each claim. For the same reasons outlined below with respect to the excessive force claim, the Court finds this argument unpersuasive as a basis to dismiss the remaining claims.

### III.     Fifth Claim: First Amendment Infringement & Retaliation

The Amended Complaint advances two theories of First Amendment liability: (a) that Defendants "retaliated against Plaintiff for engaging in speech and/or conduct protected by the First Amendment" and (b) that Defendants "imposed restrictions on such protected speech and/or conduct that violated Plaintiff's First Amendment rights, including, but not limited to arresting and prosecuting [P]laintiff, in subjecting Plaintiff to excessive force, in selectively enforcing laws and regulations against Plaintiff, and in otherwise violating Plaintiff's rights."[3]  ECF No. 12 ¶ 173.

"To plead a First Amendment retaliation claim a plaintiff must show: (1) he has a right protected by the First Amendment; (2) the defendant's actions were motivated or substantially caused by his exercise of that right; and (3) the defendant's actions caused him some injury." *Dorsett v. Cnty. of Nassau*, 732 F.3d 157, 160 (2d Cir. 2013).

The County Defendants do not seriously contest the first two elements, focusing instead on the third.  To that end, County Defendants argue that Plaintiff has not established any constitutional injury because Plaintiff has not alleged any specific instances in which she desired to exercise her First Amendment rights but could not or would not because of Defendants' conduct.  But, at the very least, Plaintiff was prevented from further protesting during the two hours in which she was detained.   At this stage, at least, Plaintiff's First Amendment claims may proceed.

### IV.     Sixth Claim: Failure to Intervene – Individual Officers

"It is widely recognized that all law enforcement officials have an affirmative duty to intervene to protect the constitutional rights of citizens from infringement by other law enforcement officers in their presence." *Allen v. City of New York*, 480 F. Supp. 2d 689, 694 (S.D.N.Y. 2007) (quoting another source).  To state a claim against an officer for his or her failure

---

[3] It is unclear whether these two theories are distinct.  Plaintiff does not appear to allege viewpoint discrimination.

11

to intervene, a plaintiff must allege facts demonstrating that "(1) the officer had a realistic opportunity to intervene and prevent the harm; (2) [the officer knew] that the victim's constitutional rights were being violated; and (3) the officer [did] not take reasonable steps to intervene." *Jean-Laurent v. Wilkinson*, 540 F. Supp. 2d 501, 512 (S.D.N.Y. 2008).

The County Defendants argue first that Plaintiff has failed to plead the second element—that they knew that Plaintiff's constitutional rights were being violated. ECF No. 14-3 at 20-21. Although this claim in the Amended Complaint does not contain the words "knew" or "knowledge," it does state facts sufficient to infer knowledge. For example, the Amended Complaint contains facts suggesting that Individual Officers were in close proximity to the alleged constitutional violations as they were occurring and were therefore aware of them. *See* ECF No. 12 ¶¶ 41-59 (describing the actions of officers and deputies in managing the crowd and using chemical weapons). These allegations are sufficient to proceed to discovery. *Weaver v. City of New York*, No. 13-CV-20 CBA SMG, 2014 WL 950041, at *7 (E.D.N.Y. Mar. 11, 2014) ("Because [plaintiff's] complaint alleges facts from which this Court could reasonably infer that at least one of the defendants had reason to know that [plaintiff] was being unjustifiably arrested, her claim may proceed.").

V.    **Seventh Claim: Negligent Training, Supervision, and Discipline – Baxter**

"It is well-settled under New York law that a sheriff may not be held vicariously liable for the torts committed by its employees while they are performing a criminal justice function." *Ryan v. Moss*, No. 11-CV-6015P, 2013 WL 956722, at *18 (W.D.N.Y. Mar. 12, 2013). There is no question that the Sheriff's Deputies here were performing a criminal justice function during the protests.

However, in contrast to *respondeat superior* liability, "a sheriff *may* be held liable for his own negligent conduct, including a failure to train or supervise his subordinates." *Id.* at *19 (emphasis added); *see Cash v. Cnty of Erie*, No. 04-CV-182C(F), 2007 WL 2027844, at *5 (W.D.N.Y. July 11, 2007) ("[A] cause of action sounding in negligence is legally sustainable against a [sheriff] when the injured party demonstrates that he was injured due to the negligent training and supervision of a law enforcement officer.").

Baxter argues that he cannot be held liable for his own alleged negligent conduct if the Sheriff's deputies were acting outside the scope of their employment. This argument conflates the unique standard for a sheriff's liability under a negligent training, supervision, and discipline theory, with the standard for other municipal employers, such as the City. Baxter's argument, therefore, is misplaced.

So too is Baxter's argument that the Amended Complaint is devoid of allegations that Baxter was ever aware of any supervision or training failures. ECF No. 14-3 at 22. As explained below with respect to *Monell* liability, Plaintiff has alleged that Baxter took "no steps to train Sheriff's Deputies on lawfully policing protests and other First Amendment activities," ECF No. 12 ¶ 97, and that Baxter failed to train Sheriff's Deputies on how to distinguish peaceful protests from acts of violence and how they should respond to each differently, *id.* ¶ 98. Accordingly, Baxter's motion to dismiss the negligent training, supervision, and discipline claim is denied.

## VI. Eighth Claim: Negligent Planning – Baxter

Plaintiff asserts a claim against Baxter for his own negligent planning of the protest response. Baxter and Plaintiff appear to agree that a "special duty" is required to establish a negligence claim against Baxter, but Baxter argues that Plaintiff has not established that Baxter owed a "special duty" to Plaintiff and that the absence of such a "special duty" is fatal to her claim.

The Court agrees with Baxter that Plaintiff must allege a "special duty," but it concludes that—at least for purposes of this motion to dismiss—Plaintiff has done so.

"When a negligence claim is asserted against a municipality or its employees, the threshold inquiry is whether the municipal entity was engaged in a proprietary function or acted in a governmental capacity at the time the claim arose." *Velez v. City of New York*, 730 F.3d 128, 134 (2d Cir. 2013) (quoting another source). "A municipality performs a governmental function when its acts are undertaken for the protection and safety of the public pursuant to the general police powers." *Id.* at 134-35. "Where, as here, a municipality undoubtedly acts in a governmental capacity, a plaintiff may not recover without proving that the municipality owed a 'special duty' to the injured party." *Id.* at 135. It is Plaintiff's burden to establish a special relationship and "where the plaintiff fails to meet this burden, the analysis ends and liability may not be imputed to the municipality that acted in a governmental capacity." *Applewhite v. Accuhealth, Inc.*, 21 N.Y.3d 420, 426 (2013).

> To establish such a special relationship, Plaintiff must plead four elements:
>
> (1) an assumption by the municipality, through promises or actions, of an affirmative duty to act on behalf of the party who was injured; (2) knowledge on the part of the municipality's agents that inaction could lead to harm; (3) some form of direct contact between the municipality's agents and the injured party; and (4) that party's justifiable reliance on the municipality's affirmative undertaking.

*Id.*

The New York Court of Appeals recently confirmed that "plaintiffs must establish that a municipality owed them a special duty when they assert a negligence claim *based on actions taken by a municipality acting in a governmental capacity*." *Ferreira v. City of Binghamton*, No. 10, 2022 WL 837566, at *1 (N.Y. Mar. 22, 2022) (emphasis added). In *Ferreira*, the Second Circuit certified the following question to the New York Court of Appeals:

14

> Does the "special duty" requirement—that, to sustain liability in negligence against a municipality, the plaintiff must show that the duty breached is greater than that owed to the public generally—apply to claims of injury inflicted through municipal negligence, or does it apply only when the municipality's negligence lies in its failure to protect the plaintiff from an injury inflicted other than by a municipal employee?

*Id.* at *2. The New York Court of Appeals answered that a plaintiff must plead a special duty even where, as here, Plaintiff alleges injury from a municipal employee's direct negligence, rather than from a municipality's failure to protect Plaintiff from some third party. It explained that a rule, like that advanced by Plaintiff "purporting to draw a distinction between those negligence claims alleging injuries inflicted by municipal actors and those in which the injury is alleged to be inflicted by a nongovernmental actor [ ] is belied by our precedent, unworkable, and contrary to the public policies upon which the special duty requirement is founded." *Id.* *6. Accordingly, Plaintiff must establish a special duty to survive a motion to dismiss the negligent planning claim.

Here, Plaintiff alleges that Baxter "had a special duty to ensure that the rights of Plaintiff and other protestors to free speech, expression and to assemble under Article I, section 8 of the New York State Constitution were not violated, and that protestors were not assaulted, battered, and subjected to excessive force and/or falsely arrested by law enforcement." ECF No. 12 ¶ 195. Although courts have not specifically found that a special duty arises in these circumstances, *Ferreira* is instructive.

There, the police obtained information that Michael Pride—a suspect who police believed to be armed and dangerous—resided at a certain apartment in Binghamton. *Ferreira*, 2022 WL 837566, at *1. The police obtained a no-knock warrant for the residence, surveilled the residence, and observed Pride leave the residence. The police never saw Pride return to the apartment, nor did they conduct additional surveillance. But because the police believed Pride to be heavily armed and dangerous, they executed the no-knock warrant with a SWAT team the next morning. Upon

15

entry, the police encountered plaintiff, who was unarmed, and shot him in the stomach. Plaintiff sued Binghamton and the police department in federal court, alleging that defendants were negligent in planning the raid. *Id.* *2. A jury determined that Binghamton was negligent and it appealed to the Second Circuit, which certified the "special duty" question to the New York Court of Appeals. As explained above, the New York Court of Appeals determined that a plaintiff must establish a "special duty" when suing a municipality in negligence for an injury it directly inflicted. But the court noted that "because the underlying premise of the certified question appears to be that a special duty could not be established in a scenario like the one presented, we take this opportunity to clarify that this is not the case: a special duty may be established where the police plan and execute a no-knock search warrant on a targeted residence." *Id.* at *8.

The court explained that execution of a no-knock warrant raises a "special duty" because "when police plan and execute a no-knock warrant, they effectively take control of the targeted premises, knowingly creating an unpredictable and potentially dangerous condition at a particular premises." *Id.* at *9. The court further explained that

> [i]n a no-knock warrant situation, the police exercise extraordinary governmental power to intrude upon the sanctity of the home and take temporary control of the premises and its occupants. In such circumstances, the police direct and control a known and dangerous condition, effectively taking command of the premises and temporarily detaining occupants of the targeted location. As a result, the municipality's duty to the individuals in the targeted premises, a limited class of potential plaintiffs, exceeds the duty the municipality owes to the members of the general public. A special duty therefore arises when the police plan and execute a no-knock search warrant at an identified residence, running to the individuals within the targeted premises at the time the warrant is executed. In other words, in those circumstances, the police take positive control of a known and dangerous condition, creating a special duty under the third situation recognized by this Court.

*Id.*

Although this case does not present the no-knock situated addressed in *Ferreira*, there are some compelling similarities. Indeed, like executing a no-knock warrant, law enforcement

16

responding to a protest may in some senses take "positive control of a known and dangerous condition"—one that is dynamic, potentially dangerous, and buttressed by constitutional protections. That is what Plaintiff alleges here. *See, e.g.*, ECF No. 12 ¶ 43 (alleging that police "trapped peaceful protestors"). Neither party cites cases—let alone any cases post-*Ferreira*—addressing the unique facts presented here. Given *Ferreira*'s reasoning and the absence of case law confirming that a special duty does or does not exist under these unique circumstances, the Court concludes that Plaintiff's claim, at this early stage, may proceed. While the Court cannot say with certainty that a special duty exists in the circumstances presented by Plaintiff, the Court finds that Plaintiff's allegations are sufficient to survive County Defendants' motion to dismiss.[4]

## VII. Ninth Claim: Negligent Planning – City

The City does not move against this claim so it may proceed.

## VIII. Tenth Claim: Negligence – Individual Officers

Plaintiff alleges that Individual Officers are liable under a negligence theory on the basis that they had duties to "permit the protesters to engage in First Amendment Activities" and "not use force against any individual protester in the absence of individualized cause or legal justification," and that they breached those duties. ECF No. 12 ¶¶ 226-28. However, the conduct alleged, *i.e.*, Individual Defendants' use of military-grade and chemical weapons, is the same conduct for which Plaintiff asserts her battery, failure to protect, and excessive force claims. As discussed above, a plaintiff may plead in the alternative, but where, as here, they allege only

---

[4] Baxter does not argue that he cannot be held liable for this negligent planning claim under a theory of *respondeat superior*, as in the negligent training, supervision, and discipline claim. The parties do not distinguish Baxter's own alleged negligent actions in failing to properly plan the protest response from the negligent actions of his employees. Nor do they argue that the "special duty" requirement does not apply to Baxter because, as sheriff, he is not a municipality. Accordingly, the Court declines to engage further in any such analysis. *United States v. Zannino*, 895 F.2d 1, 17 (1st Cir. 1990) ("It is not enough merely to mention a possible argument in the most skeletal way, leaving the court to do counsel's work, create the ossature for the argument, and put flesh on its bones.").

intentional conduct—such as for battery or excessive force—"[they] fail[] to state negligence." *Strobridge v. City of Elmira*, No. 20-CV-1125S, 2022 WL 597464, at *11 (W.D.N.Y. Feb. 28, 2022). Because the individual City Defendants have answered this claim, Plaintiff's negligence claims against individual County Defendants are dismissed.

IX. **Eleventh & Twelfth Claims: ADA and Rehabilitation Act**

The County argues that the Amended Complaint contains no factual allegations regarding the County's liability for disability discrimination. ECF No. 14-3 at 28-31. Plaintiff fails to address this argument. The County is correct that the Amended Complaint does not allege facts sufficient to allow the Court to reasonably infer that the County is liable for either claim. Accordingly, the Eleventh and Twelfth Claims are dismissed with respect to the County only.

X. **Thirteenth & Fourteenth Claims: New York Human Rights Law & Municipal Liability – City**

Plaintiff's Thirteenth Claim is lodged against the City Defendants, only, for violations of New York's Human Rights Law. And her Fourteenth Claim is asserted against the City, only, for a municipal policy, practice, or custom of discriminating against wheelchair users. Because the City Defendants have answered these allegations, the Court declines to address them here.

## CONCLUSION

For the reasons explained above, the County Defendants' motion to dismiss, ECF No. 14, is GRANTED IN PART and DENIED IN PART. Plaintiff's Tenth Claim for negligence is dismissed with respect to individual County Defendants; Plaintiff's Eleventh Claim for violations of the ADA is dismissed with respect to the County; and Plaintiff's Twelfth Claim for discrimination under the Rehabilitation Act is dismissed with respect to the County.

The following claims may proceed: (1) municipal/*Monell* liability against the City for alleged violations of the First, Fourth, and Fourteenth Amendments, pursuant to 42 U.S.C. § 1983;

(2) municipal/*Monell* liability against the County and Baxter for alleged violations of the First, Fourth, and Fourteenth Amendments, pursuant to § 1983; (3) excessive force against all Defendants, pursuant to § 1983; (4) assault and battery against all Defendants, pursuant to New York State law; (5) First Amendment infringement and retaliation against all Defendants, pursuant to § 1983; (6) failure to intervene against all Defendants, pursuant to § 1983; (7) negligent training, supervision, and discipline against Baxter, pursuant to New York State law; (8) negligent planning of the protest response against Baxter, pursuant to New York State law; (9) negligent planning of the protest response against the City, pursuant to New York State law; (10) negligence against the individual City Defendants, pursuant to New York State law; (11) discrimination in violation of Title II of the Americans with Disabilities Act ("ADA"), against the City; (12) discrimination in violation of Section 504 of the Rehabilitation Act, 29 U.S.C. § 794 *et seq.*, against the City; (13) discrimination in violation of New York State Human Rights Law, against the City, Schiffman, Arrowood, and Burgstrom; and (14) municipal/*Monell* liability against the City for alleged discrimination against wheelchair users, pursuant to § 1983.

IT IS SO ORDERED.

Dated: November 10, 2022
       Rochester, New York

                                        _____
                                        HON. FRANK P. GERACI, JR.
                                        United States District Judge
                                        Western District of New York