UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

STEPHANIE WOODWARD,

                                           Plaintiff,

                                                                                                 Case # 21-CV-6685-FPG

v.

                                                                                                 DECISION & ORDER

THE CITY OF ROCHESTER, *et al.*,

                                           Defendants.
_____

       On May 2, 2022, Defendants County of Monroe, Sheriff Todd Baxter, and Richard Roes 1-200 moved to dismiss Plaintiff's amended complaint, including Plaintiff's claims against the County under the Americans with Disabilities Act ("ADA") and Rehabilitation Act. ECF No. 14. In its Decision & Order on the motion, the Court dismissed the ADA and Rehabilitation Act claims because "Plaintiff fail[ed] to address [Defendants'] argument" and because the amended complaint did not sufficiently allege "that the County is liable for either claim." ECF No. 32 at 18. In fact, Plaintiff had addressed those claims in her opposition memorandum. *See* ECF No. 20 at 14-16. Consequently, Plaintiff now moves for reconsideration of the Court's decision to dismiss the ADA and Rehabilitation Act claims. ECF No. 36. The County opposes the motion, ECF No. 40, and Plaintiff has filed her reply. ECF No. 42. For the reasons that follow, Plaintiff's motion is GRANTED.

       Because, in its original Decision & Order, the Court overlooked Plaintiff's arguments concerning the ADA and Rehabilitation Act claims, the Court considers it appropriate to assess the sufficiency of those claims *de novo* pursuant to the Federal Rule of Civil Procedure 12(b)(6).[1]

---

[1] Under Federal Rule of Civil Procedure 54(b), "any order . . . that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties does not end the action as to any of the claims or parties and may be revised

1

A complaint will survive a motion to dismiss under Rule 12(b)(6) when it states a plausible claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). A claim for relief is plausible when the plaintiff pleads sufficient facts that allow the Court to draw the reasonable inference that the defendant is liable for the alleged misconduct. *Id.* at 678. In considering the plausibility of a claim, the Court must accept factual allegations as true and draw all reasonable inferences in the plaintiff's favor. *Faber v. Metro. Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir. 2011). At the same time, the Court is not required to accord "[l]egal conclusions, deductions, or opinions couched as factual allegations . . . a presumption of truthfulness." *In re NYSE Specialists Secs. Litig.*, 503 F.3d 89, 95 (2d Cir. 2007).

By way of brief background, Plaintiff is paralyzed from the waist down and "exclusively uses a wheelchair for mobility." ECF No. 12 at 1. On September 16, 2020, Plaintiff attended a protest at City Hall in Rochester. During the protest, officers with the Rochester Police Department ("RPD") arrested and detained a number of protestors, including Plaintiff. *Id.* at 2. The protestors were transported to the Public Safety Building for "booking and arrest processing." *Id.* RPD officers relied on vans, owned by the County and operated by the Monroe County Sheriff's Office, to transport the protestors. *Id.*

However, Plaintiff could not be transported because neither RPD nor the Monroe County Sheriff's Office "owns or has access to any wheelchair-accessible transport vehicles." *Id.* As RPD officers considered how to transport her, Plaintiff informed them that, due to her disability, "when she felt the urge to urinate, she would have to go immediately, or she would urinate on herself." *Id.* at 24. Over the course of two hours, RPD officers continued to detain Plaintiff in the same

---

at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities." Fed. R. Civ. P. 54(b); *see also Off. Comm. of Unsecured Creditors of Color Tile, Inc. v. Coopers & Lybrand, LLP*, 322 F.3d 147, 167 (2d Cir. 2003) (noting that Rule 54(b) gives a "district court discretion to revisit earlier rulings" where, *inter alia*, there is a need "to correct a clear error or prevent a manifest injustice").

2

location.  ECF No. 12 at 25.  Throughout that time, Plaintiff "repeatedly informed [the RPD officers] that she had to urinate, but they did not permit her to use the bathroom."  *Id.*  "As a result, [Plaintiff] urinated on herself."  *Id.*  Thereafter, Plaintiff was given an appearance ticket and "told she could leave."  *Id.*  Plaintiff claims that that the County violated the ADA and Rehabilitation Act by "failing to provide wheelchair accessible transportation vehicles."  ECF No. 12 at 43-44; *see also* ECF No. 36-1 at 7 (asserting that the Amended Complaint "pleaded viable disability discrimination claims under the ADA and Rehabilitation Act as a result of the County's failure to provide her a reasonable accommodation in her post-arrest transportation").

As an initial matter, the County does not contend that a disabled arrestee's post-arrest transportation falls outside the scope of the ADA or Rehabilitation Act.  *See, e.g.*, *Woods v. City of Utica*, 902 F. Supp. 2d 273, 280 (N.D.N.Y. 2012) ("An arrestee can establish liability under the ADA and Rehabilitation Act by showing defendants failed to provide a reasonable accommodation for his disability during the course of the arrest and post-arrest, causing him to suffer greater injury or indignity than other arrestees." (internal quotation marks omitted)); *Gorman v. Bartch*, 152 F.3d 907, 913 (8th Cir. 1998) ("[Plaintiff's] allegations that the defendants denied him the benefit of post-arrest transportation appropriate in light of his disability fall within the framework of both Title II of the ADA and § 504 of the Rehabilitation Act.").  Nor does the County assert that Plaintiff's particular theory of liability—that the City and County failed to provide accessible transport vehicle for her—is not cognizable.  *Cf. Gorman*, 152 F.3d at 913 (noting that, under the ADA and Rehabilitation Act, a disabled arrestee is entitled to be "transported in a safe and appropriate manner consistent with his disability").

Rather, the County's sole argument in favor of dismissal is that the County is not sufficiently alleged to have been involved in Plaintiff's arrest, detention, and transportation.  *See*

ECF No. 22-2 at 14; *see also Bacon v. City of Richmond, Va.*, 475 F.3d 633, 642 (4th Cir. 2007) ("[T]he plain text of Title II limits responsibility to public entities that discriminate against or exclude persons with disabilities from the services, programs, or activities *administered by the entity*." (emphasis added)). Plaintiff counters that the amended complaint plausibly alleges that RPD *and* the County "coordinated the police response to the September 16, 2020 protest" and that "the County agreed to provide transportation vehicles to transport all of the arrestees for arrest processing." ECF No. 42 at 3.

Having reviewed the briefing, and reading the amended complaint in the light most favorable to Plaintiff, the Court rejects the County's argument and permits Plaintiff's ADA and Rehabilitation Act claims to proceed to discovery. Plaintiff alleges that, as part of the police response to the September 2020 protests in Rochester, RPD and the Monroe County Sheriff's Office engaged in significant coordination of their activities. For example, policymaking officials at both agencies "designed and orchestrated [an] unlawful protest response plan," and the "multi-agency response" was "managed under a Unified Command" between the City, the County, RPD, and the Sheriff's Office. *See* ECF No. 12 at 11, 12. This coordination did not only exist with respect to high-level strategy. On September 5, 2020, both agencies operated together to strategically "kettle" protestors into a small area before using excessive force against them. *See id.* at 3. And, on September 16, 2020, the Monroe County Sheriff's Office worked with RPD officers to transport arrested protestors from the protest site to the Public Safety Building. *See id.* at 2, 24-25. Indeed, Deputy Sheriffs transported all of the other arrestees to the Public Safety Building, except for Plaintiff. *See id.* at 2.

From these allegations, one can reasonably infer that "the City and County defendants coordinated the police response to the September 16, 2020 protest," that "the County agreed to

provide transportation vehicles to transport all of the arrestees for arrest processing," and that "the County defendants were made aware of the need to transport [Plaintiff]." ECF No. 42 at 3. That is, regardless of whether RPD was the formal arresting agency, the amended complaint plausibly alleges that the County coordinated with the City, RPD, and RPD officers to provide post-arrest transportation to all arrested protestors on September 16, 2020. The amended complaint further alleges that, because the County does not have wheelchair-accessible transportation vehicles, it refused to provide that same service to Plaintiff. *See* ECF No. 12 at 43-44. Reading the allegations in the light most favorable to Plaintiff, the Court must reject the County's assertion that the amended complaint fails to sufficiently allege the County's involvement in the putative ADA and Rehabilitation Act violations.

Accordingly, the Court GRANTS Plaintiff's motion for reconsideration (ECF No. 36). The Court's prior decision dismissing the ADA and Rehabilitation Act claims is hereby VACATED in that respect, and those claims are REINSTATED. This matter will otherwise proceed in accordance with the agreed-upon mediation plan.

IT IS SO ORDERED.

Dated: January 18, 2023
      Rochester, New York

HON. FRANK P. GERACI, JR.
United States District Judge
Western District of New York